[No. B232248. Second Dist., Div. Two. Mar. 26, 2012.]

THE PEOPLE ex rel. CARMEN A. TRUTANICH, as City Attorney, etc.,
Plaintiff and Respondent, v.
JEFFREY K. JOSEPH, Defendant and Appellant.

COUNSEL

Jeffrey K. Joseph, in pro. per., for Defendant and Appellant.

Carmen A. Trutanich, City Attorney (Los Angeles), Asha Greenberg, Assistant City Attorney, Anh Truong, Deputy City Attorney; Carol A. Schwab, City Attorney (Culver City) and Lisa A. Vidra, Deputy City Attorney, for Plaintiff and Respondent.

## OPINION

CHAVEZ, J.—Defendant and appellant Jeffrey K. Joseph (Joseph) appeals from the judgment entered against him after the trial court granted a motion for summary judgment and a motion for permanent injunctive relief brought by the City Attorney of the City of Los Angeles and the City Attorney of Culver City in the name of plaintiff and respondent the People of the State of California (plaintiff) for violations of the "Narcotics Abatement Law" (Health & Saf. Code, § 11570 et seq.),[1] the "Public Nuisance Law" (Civ. Code, § 3479), and the unfair competition law (Bus. & Prof. Code, §17200 et seq.). The violations occurred at a storefront business establishment known as Organica located partly in Culver City and partly in the City of Los Angeles. Joseph is the owner of Organica and the chief executive officer of a corporation named Organica, Inc.

 In its motion for summary judgment, plaintiff met its initial burden of producing admissible evidence establishing the elements of each of the causes of action asserted in its complaint. Joseph presented no admissible evidence to show that any triable issue of material fact existed or that he was entitled to any defense, including any defense under the Compassionate Use Act of 1996 (§ 11362.5) (CUA) or the Medical Marijuana Program Act of 1996 (§ 11362.7 et seq.) (MMPA). The record discloses no abuse of discretion by the trial court in granting plaintiff's motion for a permanent injunction. We therefore affirm the judgment.

### FACTUAL BACKGROUND

On July 22, 2008, the United States Drug Enforcement Administration (DEA) sent a confidential source into Organica to purchase marijuana for $100. The source entered Organica and returned with a marijuana cigarette and one gram and one-eighth of an ounce of marijuana.

On July 31, 2008, the DEA, assisted by the Culver City Police Department, executed a search warrant at Organica and recovered 48 kilograms of marijuana, 90 grams of psilocybin, 119 kilograms of edible products and beverages containing hashish oil, $16,379 in cash, and large quantities of hashish and hashish oil. The DEA also recovered customer records showing that Organica had documented approximately 1,772 "patients." Only 601 of those patients gave addresses of communities in the vicinity of Organica.

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

On April 8, 2009, Culver City police officers stopped a vehicle approximately two miles from Organica for a traffic violation. The driver had 97 live immature marijuana plants in the vehicle and a receipt bearing the account name "Organica" and the written description "40 Kush Clones, Friday." The driver advised the officer that he had picked up the plants from Organica and was taking them to a dispensary in Hollywood.

On April 8, 2009, a Los Angeles Police Department (LAPD) officer assigned to the DEA entered Organica and purchased one and one-eighth ounces of marijuana from a salesperson for $100. While at Organica, the officer observed a large clear bowl with a sign stating that vendors should leave their marijuana samples inside the bowl. The bowl contained five or six small plastic containers with green leafy substances inside them. Each had a sticker with information attached to the packaging.

Also on April 8, 2009, Culver City police officers stopped a vehicle for a traffic violation approximately half a mile from Organica. The passenger stated he had just purchased one-eighth of an ounce of "weed" from Organica and produced a medical marijuana card. The driver of the vehicle, who had no medical marijuana card or authorization, was in possession of two grams of marijuana and seven grams of psilocybin.

On April 17, 2009, a California Highway Patrol officer stopped a vehicle in Riverside for a traffic violation. The officer recovered from Joseph, who was driving the vehicle, a pill bottle containing psilocybin, 12.6 grams of hashish, and two brownies suspected to contain marijuana. The officer also found $92,352 in United States currency secreted in various parts of the vehicle. A passenger in the vehicle was in possession of approximately 5.3 grams of cocaine. On that same day, DEA agents and an LAPD officer assigned to the DEA entered Organica and purchased, in five separate transactions, $1,495 worth of marijuana.

On May 11, 2009, LAPD officers observed a person leave Organica and enter a vehicle subsequently involved in a traffic violation. Three students from a high school in Manhattan Beach were in the vehicle. One had in his possession bottles of marijuana bearing Organica labels.

On May 26, 2009, a DEA special agent who had previously visited Organica returned and purchased $100 worth of marijuana. Because of the volume of business being conducted, the agent had to wait 10 minutes to obtain the marijuana.

On August 5, 2009, an LAPD officer assigned to the DEA entered Organica and purchased two different kinds of marijuana totaling $100.

On August 12, 2009, police officers from multiple agencies served a search warrant at Organica and recovered 82 kilograms of marijuana, approximately 7.5 kilograms of hashish, 410 marijuana plants, $18,388.10 in currency, and large amounts of hashish oil and marijuana-containing edible products.

On December 18, 2009, two different DEA agents entered Organica and purchased, in separate transactions, one-eighth of an ounce of marijuana for $60, and one-eighth of an ounce of marijuana for $40. One of the agents saw Joseph assisting a customer.

On December 22, 2009, two different DEA agents each purchased one-eighth of an ounce of marijuana from an Organica employee in separate transactions for $60 and $100, respectively. One of the agents observed in Organica a large white menu on the wall listing the names and prices of the marijuana available for sale. There was also a menu on the counter listing 36 varieties of marijuana.

On February 18, 2010, law enforcement officers from multiple agencies served a search warrant at Organica and recovered approximately 23.9 kilograms of marijuana, 90 marijuana plants, 452.2 gross grams of hashish, 521.9 gross grams of hashish oil, and 22.8 kilograms of edibles containing marijuana. Inside Organica's premises, a menu listed the varieties of marijuana available for sale and the price for each strain.

## PROCEDURAL BACKGROUND

Plaintiff filed this action on February 18, 2010, against Joseph, Organica, Inc., and BMD Washington, the owner of the property on which Organica was located.[2] Joseph and Organica, Inc.,[3] filed an unverified answer asserting 25 affirmative defenses, including defenses against criminal sanctions under section 11362.775, part of the MMPA.

On April 13, 2010, the trial court issued a preliminary injunction barring Organica, Inc., and Joseph from engaging in further sales or distribution of marijuana and other narcotics. In doing so, the trial court ruled as a matter of law that Joseph and Organica, Inc., had no defense under either the CUA or the MMPA. Defendants then fired their attorney, and Joseph appeared in propria persona.[4]

---

[2] Organica, Inc., and BMD Washington are not parties to this appeal.

[3] Joseph and Organica, Inc., are sometimes referred to collectively as defendants.

[4] Organica, Inc., remained unrepresented until a September 17, 2011 hearing on an order to show cause regarding legal representation. At that hearing, Joseph and Organica, Inc.'s former attorney advised the trial court that he would represent Organica, Inc., but not Joseph.

On October 21, 2010, plaintiff filed a motion for summary judgment against defendants. Joseph opposed the motion on the ground that there were triable issues of material fact.[5] Joseph's opposition was supported by a separate statement of disputed facts and exhibits consisting of an LAPD followup investigation report dated February 1, 2010, tax returns, bank statements, cancelled checks, and correspondence for or from Joseph or Organica, newspaper articles describing execution of the various search warrants at Organica, and the declarations of Derrie Malone and Joseph Peters, Organica employees who described Organica's operations and the August 12, 2009 search of Organica's premises by law enforcement officers. Peters also described the execution of the search warrant at Organica's premises on February 18, 2010. Plaintiff objected to Joseph's evidence as inadmissible hearsay, lacking foundation and authentication, and irrelevant.

The trial court sustained all of plaintiff's evidentiary objections. On January 6, 2011, the trial court granted the motion for summary judgment, finding that plaintiff met its initial burden of establishing violations of the Narcotics Abatement Law, the Public Nuisance Law, and the unfair competition law and that Joseph and the other defendants failed to raise any triable issue of fact or to establish any defense. Neither Joseph nor Organica, Inc., appeared at the January 6, 2011 hearing.

Because Joseph had not appeared at the hearing on plaintiff's summary judgment motion, the trial court allowed him to present argument on January 7, 2011. After hearing Joseph's argument, the trial court again granted the motion for summary judgment.

Plaintiff then filed a motion for permanent injunctive relief prohibiting defendants from unlawfully selling, serving, storing, keeping, manufacturing, or giving away controlled substances, including marijuana, anywhere in Culver City or the City of Los Angeles, and from using Organica, Inc.'s business license and tax registration certificate to engage in such activities anywhere in Culver City or the City of Los Angeles. Plaintiff also sought recovery of civil penalties, fees, and costs. In support of its motion, plaintiff presented evidence that after the trial court issued a preliminary injunction prohibiting defendants from engaging in sales or distribution of marijuana and other narcotics, defendants allowed other persons to use Organica, Inc.'s City of Los Angeles business and tax registration certificate to sell marijuana at a new location within the City of Los Angeles.

The trial court granted plaintiff's motion for a permanent injunction, and judgment was entered against defendants, including a monetary judgment of

---

[5] Organica, Inc., did not oppose the motion.

$325,829.75, consisting of $130,000 in civil penalties, $88,165 in attorney fees, $106,549.75 in investigative costs, and $1,115 in court fees.

This appeal followed.

## DISCUSSION

### I. *Standard of Review*

Summary judgment is granted when a moving party establishes the right to entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A plaintiff seeking summary judgment bears the burden of producing admissible evidence on each element of a cause of action entitling it to judgment. (§ 437c, subd. (p)(1).) This means that a plaintiff that would bear the burden of proof by a preponderance of evidence at trial "must present evidence that would *require* a reasonable trier of fact to find any underlying material fact more likely than not." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851 [107 Cal.Rptr.2d 841, 24 P.3d 493].) It is not the plaintiff's burden, however, to disprove any affirmative defenses asserted by the defendant. (*Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 565 [88 Cal.Rptr.3d 363].) Once the plaintiff meets its initial burden, the burden then shifts to the defendant "to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(1).)

We review the trial court's grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296]; Code Civ. Proc., § 437c, subd. (c).)

A trial court's decision to grant a permanent injunction rests within its sound discretion and will not be disturbed without a showing of a clear abuse of discretion. (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912 [117 Cal.Rptr.2d 631].) "Generally, in reviewing a permanent injunction, we resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge all reasonable inferences that support the trial court's order. [Citation.] However, where the ultimate facts are undisputed, whether a permanent injunction should issue becomes a question of law, in which case the appellate court may determine the issue without regard to the conclusion of the trial court. [Citation.]" (*Cabrini Villas Homeowners Assn. v. Haghverdian* (2003) 111 Cal.App.4th 683, 688–689 [4 Cal.Rptr.3d 192].)

## II. *Summary Judgment*

### A. *Violation of Narcotics Abatement Law*

Plaintiff's first cause of action is premised on violation of section 11570, which states: "Every building or place used for the purpose of unlawfully selling, serving, storing, keeping, manufacturing, or giving away any controlled substance, precursor, or analog specified in this division, and every building or place wherein or upon which those acts take place, is a nuisance which shall be enjoined, abated, and prevented, and for which damages may be recovered, whether it is a public or private nuisance."

■ Plaintiff met its initial burden of establishing a violation of section 11570 based on the unlawful sale, storage, or giving away of marijuana at Organica's premises. Marijuana is a "controlled substance" within the meaning of section 11570. (§§ 11007, 11054, subd. (d)(13).) Unless authorized by law, selling, furnishing, or giving away marijuana is a crime. (§ 11360.)

In opposing plaintiff's motion for summary judgment, Joseph claimed that the sale of marijuana at Organica's premises was authorized and protected under the CUA and the MMPA. The marijuana sales activity that occurred at Organica's premises was not authorized or protected under the CUA as a matter of law, and Joseph failed to present any admissible evidence to establish a defense under the MMPA.

■ The CUA was enacted in part "[t]o ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction." (§ 11362.5, subd. (b)(1)(B).) To achieve that end, the statute accords patients and primary caregivers an affirmative defense to prosecution for possession and cultivation of marijuana. (§ 11362.5; *People ex rel. Lungren v. Peron* (1997) 59 Cal.App.4th 1383, 1400 [70 Cal.Rptr.2d 20] (*Peron*).) The CUA does not authorize medical marijuana patients or their primary caregivers to engage in sales of marijuana. (*Peron*, at p. 1390.) As a matter of law, the CUA did not shield the marijuana sales activities at Organica.

■ The MMPA "accords qualified patients, primary caregivers, and holders of valid identification cards, an affirmative defense to certain enumerated penal sanctions that would otherwise apply to transporting, processing, administering, or giving away marijuana to qualified persons for medical use." (*City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1171 [100 Cal.Rptr.3d 1].) One of the enumerated penal sanctions for which the MMPA provides a defense is the abatement of a nuisance pursuant to section 11570.

(§§ 11362.765, 11362.775.) Section 11362.775 provides that "[q]ualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions . . ." under certain specified statutes, including section 11570.

 Section 11362.765, part of the MMPA, similarly shields qualified patients, their primary caregivers, and individuals who provide assistance to such persons, against penal sanctions for engaging in certain activities, such as the "administration" of medical marijuana to a qualified patient, instructing qualified patients and their primary caregivers in "the skills necessary to cultivate or administer marijuana for medical purposes," and transporting or delivering a qualified patient's medical marijuana. (§ 11362.765, subd. (b)(1)–(3); see *id.*, subd. (a) ["Subject to the requirements of this article, the individuals specified in subdivision (b) shall not be subject, on that sole basis, to criminal liability under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570."].) Section 11362.765 also allows primary caregivers to receive reasonable compensation for their services in administering, transporting, or delivering marijuana for medical purposes to a qualified patient. Subdivision (c) of section 11362.765 provides: "A primary caregiver who receives compensation for actual expenses, including reasonable compensation incurred for services provided to an eligible qualified patient or person with an identification card to enable that person to use marijuana under this article, or for payment for out-of-pocket expenses incurred in providing those services, or both, shall not, on the sole basis of that fact, be subject to prosecution or punishment under Section 11359 or 11360."

The term "primary caregiver" is defined in section 11362.7, subdivision (d), part of the MMPA, as follows:

" 'Primary caregiver' means the individual, designated by a qualified patient or by a person with an identification card, who has consistently assumed responsibility for the housing, health, or safety of that patient or person, and may include any of the following:

"(1) In any case in which a qualified patient or person with an identification card receives medical care or supportive services, or both, from a clinic licensed pursuant to Chapter 1 (commencing with Section 1200) of Division 2, a health care facility licensed pursuant to Chapter 2 (commencing with Section 1250) of Division 2, a residential care facility for persons with chronic life-threatening illness licensed pursuant to Chapter 3.01 (commencing with Section 1568.01) of Division 2, a residential care facility for the

elderly licensed pursuant to Chapter 3.2 (commencing with Section 1569) of Division 2, a hospice, or a home health agency licensed pursuant to Chapter 8 (commencing with Section 1725) of Division 2, the owner or operator, or no more than three employees who are designated by the owner or operator, of the clinic, facility, hospice, or home health agency, if designated as a primary caregiver by that qualified patient or person with an identification card.

"(2) An individual who has been designated as a primary caregiver by more than one qualified patient or person with an identification card, if every qualified patient or person with an identification card who has designated that individual as a primary caregiver resides in the same city or county as the primary caregiver.

"(3) An individual who has been designated as a primary caregiver by a qualified patient or person with an identification card who resides in a city or county other than that of the primary caregiver, if the individual has not been designated as a primary caregiver by any other qualified patient or person with an identification card."

■ Neither section 11362.775 nor section 11362.765 immunizes the marijuana sales activity conducted at Organica. Section 11362.775 protects group activity "to cultivate marijuana for medical purposes." It does not cover dispensing or selling marijuana.

■ Section 11362.765 allows reasonable compensation for services provided to a qualified patient or person authorized to use marijuana, but such compensation may be given only to a "primary caregiver." Joseph does not meet the statutory definition of a primary caregiver. There was no evidence that Organica's patrons had designated Joseph as their primary caregiver, or that Joseph had consistently assumed responsibility for their housing, health or safety. None of the undercover law enforcement officers who purchased marijuana at Organica had designated Joseph or any other Organica employee as their primary caregiver. There was no evidence that Organica was licensed as a clinic, health care facility, residential care facility, or hospice. There was no evidence that persons who purchased marijuana at Organica resided in the same city or county as Joseph. Of the 1,772 "patients" documented in Organica's customer records, only 601 had addresses in Los Angeles, Venice, Marina del Rey, or Culver City.

The marijuana sales activities at Organica fall outside the scope of both the CUA and the MMPA. Plaintiff accordingly established it was entitled to judgment as a matter of law on its cause of action for violation of section 11570 based on the unlawful sale of marijuana at Organica's premises.

B. *Public Nuisance Law*

■ Civil Code section 3479 defines a nuisance as: "Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." "A nuisance may be a public nuisance, a private nuisance, or both. [Citation.]" (*Newhall Land & Farming Co. v. Superior Court* (1993) 19 Cal.App.4th 334, 341 [23 Cal.Rptr.2d 377].) "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." (Civ. Code, § 3480.)

■ "[A] nuisance per se arises when a legislative body with appropriate jurisdiction, in the exercise of the police power, expressly declares a particular object or substance, activity, or circumstance, to be a nuisance. . . . [T]o rephrase the rule, to be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1206–1207 [52 Cal.Rptr.2d 518].) "[W]here the law expressly declares something to be a nuisance, then no inquiry beyond its existence need be made . . . ." (*Id.* at p. 1207.) " 'Nuisances *per se* are so regarded because no proof is required, beyond the actual fact of their existence, to establish the nuisance.' [Citations.]" (*City of Costa Mesa v. Soffer* (1992) 11 Cal.App.4th 378, 382 [13 Cal.Rptr.2d 735], fn. omitted.)

Plaintiff presented admissible evidence that Organica's premises were used "for the purpose of unlawfully selling, serving, storing, keeping, manufacturing, or giving away a[] controlled substance," in violation of section 11570. Such violations constitute nuisances per se under Civil Code section 3479.

On multiple occasions, undercover law enforcement officers purchased marijuana at Organica's premises. Menus listing the varieties and prices of marijuana available for sale were prominently displayed at the premises. An officer observed Joseph assisting an Organica customer with a purchase. In three separate warranted searches of Organica's premises, law enforcement officers recovered 155.1 kilograms of marijuana, 698 marijuana plants, 488.9 gross grams of marijuana seeds, 43.9 gross grams of marijuana cigarettes, 22.8 kilograms of various edible products containing marijuana, and large amounts of cash.

Joseph presented no admissible evidence establishing a triable issue of material fact or a defense. Plaintiff therefore established it was entitled to judgment as a matter of law on its cause of action under the Public Nuisance Law.

### C. Business and Professions Code section 17200

Business and Professions Code section 17200 proscribes three types of unfair business practices—acts or practices which are unlawful, unfair, or fraudulent. Section 17200 states: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

" ' "The 'unlawful' practices prohibited by . . . section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. [Citation.] . . . As our Supreme Court put it, section 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq." ' [Citations.]" (*South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 880–881 [85 Cal.Rptr.2d 301] (*South Bay*).)

Civil actions under Business and Professions Code section 17200 may be brought in the name of the People of the State of California by any city attorney of a city with a population in excess of 750,000, or, with the consent of the district attorney, by any city with a full-time city prosecutor. (Bus. & Prof. Code, § 17204.)

Plaintiff presented admissible evidence that violations of the Narcotics Abatement Law and the Public Nuisance Law occurred at Organica's premises. Such violations constituted unlawful business practices prohibited by Business and Professions Code section 17200. (*South Bay, supra,* 72 Cal.App.4th at p. 880.) Joseph failed to present any admissible evidence sufficient to raise a triable issue of material fact or any defense. Plaintiff therefore established it was entitled to judgment as a matter of law on its cause of action for violation of Business and Professions Code section 17200.

Plaintiff established that it was entitled to judgment as a matter of law on each of the three causes of action asserted in its complaint. Summary judgment was therefore properly granted in its favor.

### III. Permanent Injunction

Injunctive relief is authorized under all three causes of action asserted in plaintiff's complaint. The Narcotics Abatement Law expressly

authorizes the city attorney of any incorporated city to bring an action to enjoin violations of section 11570. Section 11571 provides: "If there is reason to believe that a nuisance, as described in Section 11570, is kept, maintained, or exists in any county, the district attorney or county counsel of the county, or the city attorney of any incorporated city or of any city and county, in the name of the people, may, or any citizen of the state resident in the county, in his or her own name, may, maintain an action to abate and prevent the nuisance and to perpetually enjoin the person conducting or maintaining it, and the owner, lessee, or agent of the building or place in or upon which the nuisance exists from directly or indirectly maintaining or permitting the nuisance."

▇▇ The unfair competition law similarly authorizes injunctive relief against unlawful business practices. Business and Professions Code section 17203 provides in part: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . . ."

▇▇ Finally, the Public Nuisance Law authorizes injunctive relief to abate a public nuisance. (Civ. Code, § 3491; *In re Englebrecht* (1998) 67 Cal.App.4th 486, 492 [79 Cal.Rptr.2d 89].) To qualify as a public nuisance and to be enjoinable, a nuisance must be both substantial and unreasonable. (*Englebrecht, supra*, at p. 492.)

There is ample support in the record for the nature and scope of the injunctive relief granted by the trial court in this case. Undercover law enforcement officers purchased marijuana at Organica's premises in 13 separate transactions over a two-year period. Three separate search warrants executed at Organica's premises yielded large quantities of marijuana and marijuana-containing products, psilocybin, and large amounts of cash. After the trial court issued a preliminary injunction barring Joseph and Organica, Inc., from unlawfully selling, storing or distributing marijuana and other narcotics at Organica's premises in Culver City and the City of Los Angeles, Joseph allowed others to use Organica, Inc.'s business license to operate a marijuana dispensary at a new location in the City of Los Angeles.

The trial court did not abuse its discretion by issuing a permanent injunction barring Joseph and Organica, Inc., from engaging in or allowing the unlawful selling, storing, serving, keeping, manufacturing, or giving away of controlled substances, including marijuana, and from using Organica, Inc.'s City of Los Angeles business and tax registration certificate to engage in such activities.

## DISPOSITION

The judgment is affirmed. Plaintiff is awarded its costs on appeal.

Doi Todd, Acting P. J., and Ashmann-Gerst, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 27, 2012, S202193.