Filed 6/20/13  P. v. Fernandez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHN FERNANDEZ,<br><br>    Defendant and Appellant. | B239865<br><br>(Los Angeles County<br>Super. Ct. No. KA092813) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Reversed and remanded.


        Leonard J. Klaif for Defendant and Appellant.


        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael R. Johnsen and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

At defendant and appellant John Fernandez's jury trial for marijuana-related offenses, the trial court refused to instruct on a medical marijuana defense under Health and Safety Code section 11362.775[1] of the Medical Marijuana Program Act (MMPA). Because there was evidence Fernandez possessed and transported the marijuana for reasons related to his membership in a marijuana collective sufficient to warrant instruction on the defense, we reverse the judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Factual background.

#### A.     *Prosecution case.*

On the afternoon of November 30, 2010, Los Angeles County Sheriff's Department Sergeant Jason Wolak was on patrol in La Puente when he saw Fernandez make an unlawful lane change.[2] As Sergeant Wolak approached Fernandez's car, he smelled marijuana. Fernandez admitted he had marijuana in a backpack, but he explained he was a "vendor" who had just sold marijuana to a dispensary in La Puente. Fernandez, who gave the sergeant a medical marijuana card,[3] said he made up to $250 per hour selling marijuana by the pound to collectives. Two thousand dollars bundled in rubber bands was in the car. In the backpack were a large bag of marijuana and four individual packets or "little medicine jars" containing marijuana.[4]

Uncertain how to proceed, Sergeant Wolak asked Detective Robert Wagner, a member of the Marijuana Dispensary Task Force, to come to the location. Fernandez repeated to Detective Wagner that he was a vendor selling marijuana to dispensaries. He

---

[1]     All further undesignated statutory references are to the Health and Safety Code.

[2]     Two men were in the car, Fernandez and an unidentified front passenger.

[3]     The parties stipulated at trial that defendant was a qualified medical marijuana patient with a valid state-issued identification card.

[4]     Testing confirmed that the substance in the large bag was 436 grams of marijuana. One vial or bottle contained 4.37 grams of marijuana.

2

made about $250 per hour selling marijuana and he had just sold a pound of it for $2,000, which was also in the car. According to the detective, the marijuana was packaged in the way in which dispensaries package it. The "pill bottles" contained samples for the dispensaries to smoke to determine the quality before buying.

Based on what Fernandez said, Detective Wagner arrested Fernandez. In the detective's expert opinion, the marijuana was possessed for sale to dispensaries.

B. *Defense case.*

Robert Ortiz is the director and a member of Whittier Hope Collective (Whittier Hope or "the collective")[5] in Whittier. He is also Fernandez's brother. Whittier Hope applied for and received a license under the city's ordinance in 2010, and it received a seller's permit for marijuana from the state. The collective pays taxes and is a registered nonprofit corporation. Membership in the collective is open to "valid" medical marijuana patients who are California residents. Whittier Hope does not require its members to agree not to become a member of another collective. The collective has approximately 5,500 members.

Whittier Hope gets its marijuana from members. Because the collective's conditional use permit does not allow it to cultivate on premises, about 5 percent of its members donate excess marijuana they cultivate, and it is redistributed to members who do not cultivate. Members who donate marijuana are reimbursed for their expenses, excluding labor. Reimbursement is calculated based on "experience" and "common knowledge" of "how expensive cultivating cannabis" is. Members who get marijuana from the collective provide monetary reimbursement, called a "donation."

Fernandez is a member of Whittier Hope, and he cultivates marijuana, the excess of which he donates to the collective. Fernandez, who lives with Ortiz, cultivates the marijuana at their home. In November 2010, Fernandez was cultivating a high quality strain of marijuana helpful for pain, joint relaxation, spasms, and insomnia. Known as

---

[5]     Whittier Hope is about five and one-half miles from the traffic stop.

3

King Louis the 13th, the strain is very hard to cultivate successfully, and therefore it is not easy to find.

On November 26, 2010, Whittier Hope advanced $2,000 out of a total $4,100 to Fernandez to grow King Louis the 13th. A collective member wanting to get the strain might reimburse the collective $20 for one gram; $60 for an eighth of an ounce; $110 for a quarter of an ounce; $220 for half an ounce; and $420 for one ounce. Whittier Hope does not sell marijuana to other collectives.

Fernandez testified that he has been a medical marijuana patient since 2006 and that in November 2010 he was cultivating it. When Officer Wolak stopped him, Fernandez had marijuana that was in the curing or "burping" process, which requires the marijuana to be checked every hour to hour and a half. The marijuana in the large bag was going to Whittier Hope once it finished curing.

Fernandez gave the officer his medical marijuana card and a letter from Whittier Hope allowing him to transport the marijuana. He did not tell the officer he had just sold a pound of marijuana to a collective in La Puente or that he was going to another collective in La Puente. He did not tell the officer he was paid $250 an hour to deliver marijuana to collectives. The $2,000 was an advance from Whittier Hope, and he would get the remaining $2,100 when he produced the marijuana.

He was in La Puente that day to pick up a friend and take him to the friend's girlfriend's house.

## II.     Procedural background.

The defense asked, before trial, that the jury be instructed on a medical marijuana defense. After a lengthy pretrial hearing on the matter, the trial court denied the request but allowed limited evidence relevant to the defense to be admitted because it was also relevant to Fernandez's intent to sell. At the close of evidence, the trial court again refused to instruct the jury on a medical marijuana defense.

On February 16, 2012, a jury found Fernandez guilty of count 1, possession of marijuana for sale (§ 11359) and of count 2, transporting marijuana (§ 11360, subd. (a)).

4

After denying Fernandez's motion for a new trial based on the failure to instruct the jury on a medical marijuana defense,[6] the trial court, on March 9, 2012, suspended imposition of sentence and placed Fernandez on three years' formal probation on the condition, among others, he serve one year in jail.

## DISCUSSION

### I. There was sufficient evidence to support instruction on a defense under section 11362.775.

The trial court refused to instruct the jury on a defense under the MMPA. But where, as here, there is substantial evidence of the defense, the instruction must be given. The judgment therefore must be reversed and the matter remanded.

"It is settled that, even in the absence of a request, a trial court must instruct on general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047.) This duty to instruct includes instruction on affirmative defenses, if the defendant is relying on such a defense, there is substantial evidence to support the defense, and the defense is not inconsistent with the defendant's theory of the case. (*Ibid*; see also *People v. Salas* (2006) 37 Cal.4th 967, 982.) "Substantial evidence [means] evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive. [Citation.]" (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.) In determining whether the evidence is sufficient to warrant instruction on a defense, the trial court does not determine the credibility of the defense evidence, "but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt . . . .' [Citations.]" (*Salas*, at pp. 982-983; see also *People v. Flannel* (1979) 25 Cal.3d 668, 684 & fn. 12,

---

[6] The motion relied on then recent authority from this Division, *People v. Colvin* (2012) 203 Cal.App.4th 1029.

5

superseded by statute on other grounds as noted in *In re Christian S.* (1994) 7 Cal.4th 768, 776.)  Doubts as to whether the evidence is sufficient to warrant instruction should be resolved in the defendant's favor.  (*Flannel,* at p. 684, fn. 12.)  The standard of review for alleged instructional error is de novo.  (*People v. Berryman* (1993) 6 Cal.4th 1048, 1089, disapproved on another ground in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

A defendant has only a "modest burden" in establishing the right to instruction on a defense under the MMPA.  (*People v. Jackson* (2012) 210 Cal.App.4th 525, 533.)  In *Colvin*, we noted that after the voters passed Proposition 215, the Compassionate Use Act of 1996, our Legislature enacted the MMPA to implement a plan for the safe and affordable distribution of marijuana to patients in need of it.  (*People v. Colvin*, *supra*, 203 Cal.App.4th at pp. 1034-1035.)  To that end, section 11362.775 of the MMPA provides a defense to certain marijuana-related charges.  It states:  "Qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions under[,]" among others, sections 11359 (possession for sale) and 11360 (transportation of marijuana).  Section 11362.775 thus permits a defense to marijuana-related charges if the defendant is, first, a qualified patient, person with a valid identification card or a designated primary caregiver; and, second, the defendant associates with similarly situated people to collectively or cooperatively cultivate marijuana.  (*Colvin*, at p. 1037.)

The defendant in *Colvin*, like Fernandez here, was stopped in his car with about a pound of marijuana, and Colvin was charged with, among other things, sale or transportation of marijuana.  Colvin, a qualified patient under the MMPA, co-owned and operated two marijuana dispensaries, and he was delivering the marijuana from one establishment to the other.  (*People v. Colvin, supra,* 203 Cal.App.4th at pp. 1032-1034.)  Although the trial court found that Colvin was a qualified patient operating a legitimate dispensary, the court disallowed a defense under section 11362.775, because Colvin's

6

" 'transportation [of marijuana] was outside of what the law permits.' " (*Colvin*, at p. 1036.)

We reversed the judgment and found that the defense applied to Colvin, as there was no evidence Colvin's transportation of marijuana was for anything other than his collectives. (*People v. Colvin, supra,* 203 Cal.App.4th at p. 1037; but see *People ex rel. Trutanich v. Joseph* (2012) 204 Cal.App.4th 1512, 1523 ["Section 11362.775 protects group activity 'to cultivate marijuana for medicinal purposes.' It does not cover dispensing or selling marijuana"].) We also rejected the Attorney General's argument that a section 11362.775 defense does not apply to a " 'large-scale . . . marijuana network' " with thousands of members, not all of whom engage in " 'some united action or participation' " in the collective. (*Colvin*, at p. 1037; see also *id.* at p. 1039.) Although the Legislature might have "envisioned small community or neighborhood marijuana gardens," nothing on the face of section 11362.775 or its legislative history supported the Attorney General's amorphous proposed limitation on the defense. (*Colvin*, at p. 1041; see *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 785.)

The People distinguish this case from *Colvin* based on evidence Fernandez sold marijuana to collectives to which he did not belong. That evidence included Sergeant Wolak's and Detective Wagner's testimony that Fernandez said he made $250 an hour selling marijuana to collectives; that Fernandez had samples of marijuana in vials; and that he was stopped near collectives having no affiliation with Whittier Hope. Fernandez, however, denied telling the officers he sold marijuana to collectives. Fernandez also explained why he had marijuana in his car: it was at a stage in the cultivation process that required constant monitoring. Ortiz, Whittier Hope's director, testified that the marijuana in Fernandez's car was intended for the collective, which had advanced $2,000 to Fernandez for it. Thus, there was conflicting evidence concerning whether the marijuana in Fernandez's car was for Whittier Hope and whether Fernandez sold marijuana to collectives other than Whittier Hope.

The People also argue that there was an insufficient showing that Fernandez was not making a profit from selling marijuana. (See, e.g., *People v. Jackson, supra,* 210

7

Cal.App.4th at p. 529 [the defense under the MMPA requires the defendant to establish that the collective or cooperative members are not engaged in a profit-making enterprise].) Ortiz, Whittier Hope's director, however, testified that the collective was a nonprofit that reimbursed its members, including Fernandez, for marijuana they donated. He briefly discussed the reimbursement method and the value of different strains of marijuana, such as King Louis the 13th. Therefore, there was evidence that the collective was a nonprofit enterprise. In any event, the trial court refused to admit all evidence about the collective, and evidence relevant to the defense and to this issue specifically may have been excluded. (See *Jackson*, at pp. 530, 538-539 [size of collective and volume of purchases may be relevant to whether the collective is a not-for-profit organization].)

The People discount the defense evidence as self-serving. That, however, is the point of evidence offered in defense to a charge. The defense evidence contradicted the officers' testimony and tended to show that Fernandez's transportation of marijuana was related to his membership in the collective. In determining the sufficiency of the evidence to support the defense, the trial court was not permitted to decide that the officers were more credible. Although the trial court reasonably believed that the vials containing samples of marijuana showed that Fernandez was selling it to collectives other than Whittier Hope, a jury could have believed that the samples were for Whittier Hope. Similarly, a jury could have found Fernandez more credible than the officers. When deciding whether there is sufficient evidence to instruct a jury on a defense, such credibility decisions are for the trier of fact. (*People v. Salas, supra,* 37 Cal.4th at p. 983.)

Based on the evidence that was admitted, the trial court erred by failing to instruct the jury on a defense under section 11362.775. We have no comment on whether Fernandez will or should ultimately succeed on the defense. We merely hold that there was sufficient evidence of the defense such that Fernandez was entitled to raise it before the jury.

## DISPOSITION

The judgment is reversed and remanded for proceedings consistent with the views we have expressed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

CROSKEY, Acting P. J.

KITCHING, J.