Filed 11/26/13  P. v. Mearns CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C072920 |
| Plaintiff and Respondent, | (Super. Ct. No. P11CRF0557) |
| v. | |
| ROBERT BROWN MEARNS, | |
| Defendant and Appellant. | |

A jury found defendant Robert Brown Mearns guilty of possessing marijuana for sale and transporting marijuana; it acquitted him of possessing concentrated cannabis. Defendant subsequently admitted a recidivist allegation.  Denying defendant's request to exercise its discretion to strike the recidivist finding, the trial court sentenced defendant to six years in state prison.

On appeal, defendant argues the trial court erred in admitting evidence that he had a prior felony conviction.  He also contends the trial court erred in failing to instruct the jury, in connection with possession for sale, that he had the right to reimbursement of his out-of-pocket expenses incurred as a primary caregiver of qualified medical marijuana

1

patients. He claims trial counsel provided ineffective assistance in failing to ask the trial court to reconsider its tentative ruling restricting the scope of the testimony of a defense witness. Finally, defendant asserts the trial court abused its discretion in declining to strike the recidivist finding. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution case*

In October 2011, a game warden was checking for after-hours hunters at about 7:00 p.m. He received a report about a car parked at a gate of a nearby private ranch, which was posted for no hunting or trespassing. When he arrived at the car, he observed a flashlight coming down the path and could discern the figures of two men coming toward him.

When they reached him, the warden asked for identification. One was defendant. They said they had been walking on the property, and denied having any firearms. Defendant acknowledged being the owner of the car. The game warden asked if he could inspect the car for firearms; defendant assented. As the game warden approached the car, he could detect a strong smell of *unburned* marijuana and asked defendant if he had any on his person or in the car. Defendant mentioned smoking marijuana earlier in the day, and began to search through paperwork inside the car. At this point, the game warden noticed the handle of what he thought was a handgun inside defendant's sweatshirt. Securing it, the game warden found it was a replica that was actually a pellet gun.

The game warden asked to search the trunk. Defendant first asserted the lock was broken, but then opened it with a key. The game warden had to handcuff defendant to prevent him from interfering with the search. Inside the trunk was a large garbage bag filled with pound-size packages of marijuana, and a briefcase. The briefcase contained smaller quantities of marijuana with various indicia of sales, including daily "menus" of types and prices of marijuana (one of them dated that day); at the bottom of the menu was

2

the notation that "Larger quantities available at amazingly low prices." There was also a list of medications for "Sam," and expired and current medical marijuana physician recommendations for defendant that limited him to five pounds or 50 plants. The total amount of marijuana seized was almost eight pounds, along with 7.1 grams of concentrated cannabis.

Defendant told the game warden that he worked at a dispensary in Sacramento. He did not mention anything about being a primary caretaker for qualified medical marijuana patients. He said he had a "215" card,[1] because he had various medical issues (mentioning cancer). The marijuana in the trunk represented his life savings, which he was afraid to leave at home because he was concerned his roommates would steal it, and he asked if he could be released with a warning. The game warden arrested him. On his person, defendant had nearly $450, mostly in $20's, and a check for $40.

A narcotics detective testified as a prosecution expert. He reviewed the game warden's arrest report. Based on those facts, he believed defendant possessed the marijuana for sale, particularly because defendant had been evasive about the presence of the contraband and described it as his life savings. The presence of various sizes of packaged marijuana, a scale, empty packaging, price lists, and a large amount of cash on defendant's person were also indicia of sales. He also noted people who possess contraband "in general" carry real or replica weapons to protect it. Eight pounds is also four times the amount typical of personal use.

*Defense case*

Defendant testified. He had been unemployed since mid-2011. He spent $4,000 from a retirement account to grow 50 plants, harvesting the crop in September 2011. He

---

[1] This is the proposition number (Prop. 215) of the successful Compassionate Use Act of 1996 (CUA) authorizing the use of medicinal marijuana. (Health & Saf. Code, § 11362.5; undesignated statutory references are to this code.)

did most of the trimming himself, but also paid "several" people about 45 cents per gram to assist. The marijuana in his trunk was "mostly" his crop, which he supplemented with other varieties from dispensaries. He had been using marijuana for about seven years to relieve chronic pain that was the result of several serious accidents, to elevate his mood, and to sleep better. He intended to use most of the marijuana personally, and to sell some of it to four individuals who are qualified medical marijuana patients with whom defendant had written agreements to be their primary caregiver. In this role, he also provided meals, transportation, clothing, small loans, and (at times) housing.[2] (Sam, whose medication list was in defendant's briefcase, was one of these patients.) Defendant drafted the "menus" to facilitate the process of familiarizing these qualified patients with his inventory.

Defendant claimed to have been hiking on the property with the permission of its owner. There had been a series of burglaries of marijuana at his home, so he had put it in the car to protect it. He brought along the cash for the same reason (and in case his 1991 car broke down). The check was a repayment of a loan, and did not involve a marijuana purchase. He had the pellet gun to protect himself during the hike from mountain lions or people, not the marijuana. In connection with the pellet gun, he admitted that he had a 1988 felony conviction, which is why he was carrying a pellet gun rather than a firearm. (The court limited the jury's consideration of the prior conviction specifically to this explanation.) He did not have cancer, but may have told the game warden that he believed marijuana would help protect him from his extensive family history of cancer.

---

[2] The four patients also testified, confirming the arrangements with defendant. At the end of trial, the parties stipulated that defendant was the caregiver for four qualified patients (as well as being a qualified patient himself), for which reason we do not need to elaborate the details of the testimony on the subject further.

Based on his estimate of $4,000 in growing costs, defendant agreed the out-of-pocket cost per pound was $500, but queried, "Doesn't my time count for anything?" He also testified that once his costs of providing transportation in connection with the qualified patients were taken into account, he did not think he was realizing any profit on the sales, even though he conceded that selling the marijuana for $25 per one-eighth of an ounce would amount to $3,200 per pound. This was all hypothetical in any event because he never sold any of the marijuana before its confiscation.

## DISCUSSION

### I. Testimony About the Prior Conviction Was Not Prejudicial

The trial court excluded use of defendant's 1988 felony molestation conviction for purposes of impeachment because it was too remote. After the testimony of the game warden about finding the pellet gun, and the testimony of the expert that carrying a pellet gun was consistent with the general practice of sellers of contraband to carry weapons to protect their wares, the prosecution asked at bench to be allowed to ask defendant about the prior conviction to the end of showing (in essence) that a pellet gun was the best defendant could do in terms of arming himself without violating the law as a convicted felon. The trial court agreed, as long as the prosecutor "sanitized" the query about the conviction.

Defendant asserts that the *reason* he carried a pellet gun instead of a firearm was irrelevant to any issue at trial, as opposed to the reason he *brought* it. Trumpeting the prejudice inherent in evidence of a prior conviction, defendant asserts this was "a close case" and we must reverse as a result, because the limiting instruction could not have been effective under these circumstances.[3]

---

[3] The latter contention—that the limiting instruction was ineffective—is an extremely dubious proposition. (*Richardson v. Marsh* (1987) 481 U.S. 200, 211 [95 L.Ed.2d 176];

Although we tend to agree that the evidence of the prior conviction was irrelevant to any material issue at trial, we conclude it was manifestly harmless. Prejudice in the context of erroneously admitted evidence is the "intolerable risk to the fairness of the proceedings" (*People v. Booker* (2011) 51 Cal.4th 141, 188) that the evidence will rouse the emotions of a jury and result in a verdict based not on logical evaluation of an issue but on a desire to punish a defendant (*People v. Doolin* (2009) 45 Cal.4th 390, 439). We do not find a 24-year-old unspecified felony conviction to be in that category. Had the exposure to information about defendant's past conviction *in fact* aroused a desire in the jury to punish him, it would not have acquitted him of possessing concentrated cannabis, given the uncontroverted evidence of defendant's guilt on that count. We therefore reject this argument.

## II. "Reimbursement" Defense Instruction Not Warranted

In connection with the pattern instruction on the elements of possession for sale of marijuana, defense counsel proposed the following addition: "Under the Compassionate Use Act [(CUA)],[4] a primary caregiver who consistently grows and supplies physician-approved . . . medicinal marijuana for qualified patients is serving the health needs of those patients, and may seek reimbursement for such services. Such reimbursement must be for out-of-pocket expenses incurred in providing those services. Assuming responsibility for housing, health, or safety of . . . patients does not preclude a primary caregiver from charging . . . patient[s] for those services. [¶] If you have a reasonable

---

*Francis v. Franklin* (1985) 471 U.S. 307, 324, fn. 9 [85 L.Ed.2d 344]; *Parker v. Randolph* (1979) 442 U.S. 62, 74-75 & fn. 7 [60 L.Ed.2d 713] (plur. opn. of Rehnquist, J.); *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 292; *People v. Anderson* (1987) 43 Cal.3d 1104, 1120-1121.) However, we do not need to consider its merits.

**4** Actually, it is the Medical Marijuana Program Act (MMP Act; § 11362.7 et seq.) from which this defense derives, as we will discuss.

doubt about w[h]ether defendant's possession of marijuana for sale was unlawful under the [CUA], you must find the defendant not guilty."

The court noted, "there's been testimony that he has sold marijuana. There's testimony that he has provided transportation, he's provided food, and he's provided housing, but no testimony at all as to what the value of any of these things are." The court also expressed its reluctance to modify pattern instructions because "it[] come[s] back in [a court's] lap" with an admonition not to modify them. The court ultimately concluded "there is no evidence that has been presented to this jury that [defendant] was simply seeking reimbursement for his expenses," and it would be inappropriate for defense counsel to make that argument because "[t]here's no evidence of that that was presented to the jury. You're asking this jury to speculate on the facts, and they clearly can't do that." Later, when the jury asked whether the CUA (to adhere to the misnomer) applied only to the charge of transportation or whether it applied to possession for sale as well, the trial court (after hearing argument from counsel) told the jury explicitly that the CUA did not apply to possession for sale.

Defendant contends the trial court should have instructed the jury generally that the MMP Act applied to the charge of possession for sale, and specifically that he could not be found guilty of possession for sale if he was a primary caregiver being reimbursed for *actual expenses* (which include reasonable compensation for services provided to a qualified patient to enable the use of marijuana, or out-of-pocket expenses incurred in providing the services).[5] (§ 11362.765, subd. (c); see *People ex rel. Trutanich v. Joseph*

---

[5] Although defendant suggests this defense should also apply to the charge of transportation, he does not explain how the defense of a right to receive reimbursement would add anything to the instruction on his defense under subdivision (b)(2) of section 11362.765 of the MMP Act, which told the jury "transportation of marijuana is lawful if authorized by the [CUA] [*sic*]. The [CUA] [*sic*] allows a person to . . . transport marijuana (for personal medical purposes or as the primary caregiver of a patient with a medical need) . . . ." (See fn. 4, *ante*.) The jury was not instructed that defendant was

(2012) 204 Cal.App.4th 1512, 1523 [noting defense, but finding it inapplicable]; *People v. Hochanadel* (2009) 176 Cal.App.4th 997, 1011 [noting guidelines from the Attorney General that allow collectives to receive monetary reimbursement in an amount necessary to cover overhead costs and expenses]; *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 784-785 [sufficient evidence in support of this defense to warrant remand for new trial].) He asserts the evidence we have included above was sufficient to warrant an instruction on this defense.

We agree with the trial court. Even assuming evidence of *other* expenses incurred as a primary caregiver can be included in the "overhead" of the price of the marijuana, there is a paucity of evidence of defendant's *actual* costs (as opposed to his testimony about the various categories of costs) other than his specification of $4,000 in costs to grow his crop, or how these *actual* costs compared with his intended sales prices—which, even at $25 per eighth-ounce, would yield $3,200 in revenue for each of the eight pounds. It is thus pure speculation that defendant's reasonable compensation for services and out-of-pocket expenses would equal over $25,000. The trial court accordingly was correct in declining to instruct on this theory in connection with possession for sale.[6] (*People v.*

---

charged in the second count with selling the marijuana, only with transporting it (or giving it away). Indeed, defendant may have received a windfall in this regard. (*People v. Wayman* (2010) 189 Cal.App.4th 215, 223 [defense limited to transporting marijuana for *current medical needs*; "it is quite another [thing] to say that qualified users have an unfettered right to take their marijuana with them wherever they go"].) Presumably, this holding extends to caregivers driving around with marijuana in excess of a qualified patient's needs.

[6] After focusing entirely on subdivision (c) of section 11362.765 as the basis for the trial court's duty to instruct (as he did in the trial court), defendant belatedly asserts in his reply brief that he also is entitled to an instruction pursuant to subdivision (b), in response to the People's unexplained inclusion of subdivision (b) in their analysis. It is too late to raise this as an alternate basis for the trial court's duty to instruct. In any event, as we note, the jury necessarily concluded in connection with the transportation count that he was not acting as a primary caregiver or making personal medical use of the marijuana, so the error is still harmless.

8

*Watson* (2000) 22 Cal.4th 220, 222 [must be substantial evidence to support defense in order to entitle defendant to instruction].)

In any event, the failure to grant defendant's request for the instruction is harmless because the jury necessarily resolved the issue adversely to him under proper instructions in finding him guilty of transportation. (*People v. Wright* (2006) 40 Cal.4th 81, 98.) As mentioned in footnote 5, *ante*, if the jury believed defendant was acting as a caregiver of qualified patients (or in connection with his own medical needs), it was instructed that this transportation was lawful. As part of the evidence under consideration, the jury had before it the stipulation to the status of defendant as caregiver and the four young men as qualified patients. Therefore, the jury necessarily rejected defendant's claim that he was acting exclusively in that capacity in transporting the marijuana, and would not have any factual basis for coming to a different conclusion in connection with possession for sale. Defendant's cavalier claim that the jury disregarded this instruction in favor of the prosecutor's argument (that even if a primary caregiver, defendant was still guilty of transportation), even if an accurate characterization of that argument, runs afoul of the authority cited in footnote 3, *ante*. We therefore reject his claim of reversible error.

### III. Defendant Cannot Establish Ineffective Assistance of Counsel on Direct Appeal

At the conclusion of a foundational hearing on the proposed testimony of a well-known defense expert witness,[7] the trial court ruled that his areas of expert testimony be limited to yield and cultivation, but it agreed to revisit its ruling in light of the testimony of the prosecution expert to determine whether other areas of testimony became relevant

---

[7] Christopher Conrad has testified in proceedings in *People v. Kelly* (2010) 47 Cal.4th 1008, 1020 and *People v. Hughes* (2012) 202 Cal.App.4th 1473, 1476 (as well as in several no longer officially published opinions, *People v. Archer* (Nov. 17, 2009, D052978), *People v. Phomphakdy* (July 31, 2008, C056881), and *People v. Arbacauskas* (Oct. 25, 2004, C044110)).

as a result. At that time, defense counsel noted the need for the defense expert was tied to the substance of the prosecution expert's testimony. Defense counsel never sought to revisit the ruling, nor called Conrad as a witness.

Defendant contends the trial court's ruling was erroneous. In defendant's view, Conrad's expertise would have been invaluable on "numerous" questions, and thus trial counsel could not have had any "proper, justifiable tactical reason" for not revisiting the issue of the limitations on the testimony after the testimony of the prosecution expert. As a result, defendant asserts that trial counsel was ineffective.

Under the first element of a claim of ineffective assistance, a defendant must demonstrate that trial counsel's omission fell below a standard of reasonableness under prevailing professional norms. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) On a silent record, we will not find a breach of professional standards unless a reasonable attorney would not have failed to act. (*People v. Pope* (1979) 23 Cal.3d 412, 426.) "Whether to call certain witnesses is . . . a matter of trial tactics, unless the decision results from unreasonable failure to investigate." (*People v. Bolin* (1998) 18 Cal.4th 297, 334.)

Defendant fails to refute this presumption of a reasonable tactical decision in the present case. The prosecution expert rested his opinion in part on defendant's evasive *conduct* during his encounter with the game warden, which is not a subject to which the defense expert could be responsive in any fashion. Nor would the defense expert have anything to contribute on the subject of whether sellers of contraband arm themselves. This leaves the question of whether the quantities and other indicia indicated defendant was selling the marijuana rather than serving only the needs of his qualified patients. But defendant did not *dispute* that he was selling marijuana; his explanation was that the price was simply recouping expenses from his qualified patients. The defense expert could not offer any opinion on that subject other than to corroborate defendant's recoupment claim as being consistent with industry practice. Therefore, trial counsel reasonably could have

10

concluded (after hearing the prosecution expert and determining that defendant would testify) that ultimately the defense would not even need expert testimony because he believed his client's testimony of itself would be persuasive, so there would not be any point in asking the court to reconsider its ruling. We therefore reject this claim. (As a result, we do not need to address defendant's arguments that the trial court's ruling was erroneous.)

## IV.  No Abuse of Discretion in Declining to Strike Recidivist Finding

Before sentencing, defense counsel filed a "*Romero* motion"[8] to dismiss the recidivist finding. It discussed the circumstances of defendant's prior conviction: Over a two-year period, defendant plied a boy (12 to 13 years old) with alcohol, marijuana, and pornography in order to induce him into mutual masturbation and allowing defendant to fellate him on a weekly basis. He may have also molested a 14-year-old boy after providing him with enough alcohol to pass out. These boys were two of a larger group with whom defendant provided alcohol, marijuana, and pornography. It also noted that he was paroled in 1991, discharged from parole in 1994 without any violations, and had not incurred any other arrests or convictions before the present offense. Finally, it pointed out that defendant had good job prospects and had been a productive member of society. It asserted defendant had been acting under a good faith belief in the legality of his present conduct under the CUA and MMP Act, continuing to claim that there was an absence of any evidence that defendant sought to profit from his sales of marijuana. The

---

[8] This is an irksome popular misnomer. *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530 held that the trial court has the power (under Pen. Code, § 1385) *sua sponte* (or on motion of the *prosecution*) to dismiss a recidivist finding in the interests of justice (a specific qualification echoed in later decisions). A defendant therefore *invites* the trial court to exercise its power sua sponte, but cannot *move* the court to act sua sponte. (*People v. Carmony* (2004) 33 Cal.4th 367, 375-376 (*Carmony*) [may "invite," which obligates court to review any proffered evidence, and allows appellate review].)

11

filing mentioned the absence of any aggravating factors in the present offense, including the quantity of marijuana (given that he was authorized to possess up to five pounds for personal use).

The trial court, which had not previously encountered a *Romero* request, "spent a lot of time going over this." After entertaining the argument of counsel, the court made a thoughtful ruling. It was concerned with defendant's associating with young men in their early 20's, providing them with marijuana, and allowing them to stay in his home. It was also concerned that in a burglary defendant reported in 2008, two of the witnesses were boys (about 14 and 15 years old) who were staying over at defendant's house to use his computer. It found defendant to have been less than candid in the present case, having failed to mention the existence of qualified patients to the game warden and having lied to the warden about recently smoked marijuana being the source of the smell, the lack of a key to the trunk, and being employed at a marijuana dispensary. The trial court found this willingness to deceive undercut other evidence of defendant's good character. It believed the evidence at trial clearly indicated defendant intended to sell marijuana for profit regardless of whether he had qualified patients, both from the indicia of sales and the evidence that his monthly expenses were greatly in excess of his stated income. Reaching the conclusion that defendant was not in any respect remorseful because he was not willing to accept the illegality of his conduct (regardless of his willingness and ability to comply with terms of probation), the court declined to exercise its power to strike the recidivist finding.

A trial court may exercise its discretion to strike a recidivist finding if, *and only if*, a defendant can be "deemed outside the . . . spirit" of the statute, giving "preponderant weight" to inherent statutory factors (such as the background, character, and prospects of a defendant, as well as the nature and circumstances of the present and previous felony

12

convictions) and ignoring any factors extrinsic to the statute. (*People v. Williams* (1998) 17 Cal.4th 148, 159, 161.)

The burden is on defendant to demonstrate that the trial court's decision was unreasonable, rather than being one of alternative reasonable readings of the facts before the court. This requires a defendant to overcome a "strong" presumption on appeal that a court's *denial* of the request to exercise discretion is proper. (*Carmony*, *supra*, 33 Cal.4th at pp. 377, 378.) *Only* where the criteria undisputedly favor a defendant (i.e., where the facts essentially as a matter of law establish entitlement to relief) would the denial of a request to exercise its power to strike be an abuse of a court's discretion. (*Id*. at p. 375.)

Defendant takes the tack of reiterating the arguments he made in the trial court and declaring the result to be an abuse of discretion without any demonstration of the irrationality or arbitrary nature of the trial court's exercise of its informed discretion. The remoteness of the prior conviction is but "a" factor, not a controlling factor. It is true defendant has not incurred arrests or convictions before the present offense, and would appear otherwise to be a productive member of society. We also agree that defendant's provision of marijuana to men in their younger 20's and allowing them to live in his home is neither criminal nor represents a threat to society, which undermines the court's ruling in this single respect.

On the other hand, that defendant as late as 2008 had boys in their teens staying over at his home—even if not illegal of itself and even if nothing untoward occurred— raises flags about whether defendant's law-abiding nature might be overcome by the near occasion of sin. As for defendant's mendacity with the game warden, he attempts to justify it as a natural response to avoid inevitable arrest despite his self-professed belief in the legality of his conduct. However, both the jury and the trial court have determined that defendant was *not* acting solely in the role of a primary caregiver, and thus his dissemblings demonstrate his inability to conform his conduct to society's dictates. It is

immaterial that this transgression was not violent, or involved a quantity of marijuana "only" three pounds in excess of his recommendation. Society, in the person of the trial judge, is not *compelled* to define deviancy downward through the toleration of violations of even its lesser mandates. As the trial court's resolution is not unreasonable, we reject defendant's claim.

## DISPOSITION

The judgment is affirmed.


      BUTZ      , Acting P. J.


We concur:


      MAURO      , J.


      MURRAY      , J.