BEVERLY REID O'CONNELL, United States District Judge
I. INTRODUCTION
Currently pending before the Court are three Motions: (1) Getty Oil Company ("Getty"), Union Oil Company of California ("Union"), ENI Oil & Gas Inc. ("ENI"), and Plains All American Pipeline, L.P.'s ("Plains") Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ; (2) an amended version of the same Motion; and, (3) Plains, ENI, Crimson Pipeline, L.P. ("Crimson"), and Union's[1] Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Rule 12(b)(1).[2] (See Dkt. Nos. 63, 65 (hereinafter, "Getty MTD"), 68 (hereinafter, "Plains MTD").) After considering the papers filed in support of and in opposition the instant Motion, the Court finds this matter appropriate for resolution without oral argument of counsel. See Fed. R. Civ. P. 78 ; C.D. Cal. L.R. 7-15. For the reasons set forth below, the Moving Defendants' 12(b)(1) Motion is DENIED and their 12(b)(6) Motion is GRANTED in part and DENIED in part .
*1039 II. BACKGROUND
A. The Parties
Plaintiffs Tesoro Refining & Marketing Company LLC and Tesoro Socal Pipeline Company LLC (collectively, "Plaintiffs") are limited liability companies who "use subterranean pipelines to transport crude oil and products" beneath property in Long Beach, California, "within Golden Avenue, between Baker Street and West Wardlow Road" (the "Site"). (Dkt. No. 58 (hereinafter, "FAC") ¶ 1.) The Site is located adjacent to a former wastewater plant operated by Oil Operators Incorporated (the "OOI Site"). (FAC ¶ 4.) Plaintiffs bring this action against multiple defendants who Plaintiffs claim each "owned, operated, controlled, or used various subterranean pipelines that have run, in relevant part, under the Site." (FAC ¶ 5.) Specifically, Defendants include: (1) County Sanitation District No. 3 of Los Angeles County, a municipal entity ("LACSD"); (2) Crimson; (3) Getty; (4) Union; (5) Doe No. 1, the successor-in-interest to General Exploration Company International ("General Exploration"); (6) Plains, who is the successor-in-interest to PPS Holding Company; (7) Ultramar Inc. ("Ultramar"), as parent company to Golden Eagle Oil Company ("Golden Eagle"); (8) Valero Energy Corporation ("Valero"), the successor-in-interest to Ultramar[3] ; (9) NuStar GP, Inc. ("NuStar"), as successor-in-interest to a Valero subsidiary; (10) ENI, a successor-in-interest to Ultramar and Golden Eagle; (11) Sunset Oil Corporation; and, (12) Douglas Oil Company.[4] (FAC ¶¶ 6-16.) Plaintiffs claim that each Defendant either owns, operates, or "is legally responsible to indemnify the owner or operator" of a pipeline at the Site or beneath Baker Street, Golden Avenue, or both. (FAC ¶ 18.)
B. Factual Background
Plaintiffs claim that LACSD owned or operated a vitrified clay sewer line of approximately thirty inches in diameter running beneath portions of the Site. (FAC ¶ 20(a).) This sewer line was used to transport waste discharged from the OOI Site, as well as various other wastes from nearby facilities. (Id. ) Plaintiffs contend that Crimson owned or operated two pipelines designated for the transportation of crude oil, one of which eventually became inactive. (FAC ¶ 20(b).) Getty owned or operated two eight-inch pipelines under Baker Street and a portion of the Site, one of which was subsequently abandoned. (FAC ¶ 20(c).) Golden Eagle and its parent Ultramar, or successors ENI, Valero, or NuStar owned and operated a six-inch and an eight-inch pipeline near the Site, that were used to transport naphtha and other materials to the Golden Eagle refinery. (FAC ¶ 20(d).) Plains owned and was responsible for a six-inch pipeline commonly referred to as Line 52 used to transmit refined gasoline and crude oil. (FAC ¶ 20(e).) Union Oil owned and operated three separate lines running under Baker Street on or near the Site. (FAC ¶ 20(f).) Finally, General Exploration owned or operated a four-inch pipeline that has been abandoned running under Baker Street near the Site.[5] (FAC ¶ 20(g).)
*1040 Plaintiffs use the Site to distribute crude oil and petroleum products that they sell to their customers. (FAC ¶ 28.) Plaintiffs acquired its interest at the Site on or about June 1, 2013, when it purchased pipelines from BP Pipelines (North American), Inc., Atlantic Richfield Company, and ARCO Terminal Services Corporation (collectively, "BP"). (FAC ¶¶ 28, 30.) On or about September 18, 2014, the Los Angeles Regional Water Quality Control Board ("Regional Board") issued Cleanup and Abatement Order No. R4-2013-0064 pursuant to California Water Code section 13304, which required BP to investigate and remediate contaminants in the subsurface of the Site. (FAC ¶ 30.) This Order alleges that three pipelines formerly owned by BP and acquired by Plaintiffs in 2013, numbered 32, 34, and 252, are a "gasoline source" and are responsible for a discharge of benzene and other contaminants at the Site. (Id. ) Plaintiffs contend that these contaminants come from Defendants' Pipelines. (See FAC ¶¶ 30-32.)
Plaintiffs have investigated and now claim that they have "found a lack of sufficient credible evidence that [their] pipelines are a viable source responsible for the benzene at the Site." (FAC ¶ 33.) In addition, Plaintiffs aver that Line 252 has never run beneath the relevant portions of Baker Street or Golden Avenue and, therefore, cannot be a cause of any contaminants at the Site. (FAC ¶ 34.) According to Plaintiffs' investigation, they allege that the contamination at the Site is attributable to products that Defendants' Pipelines carried, including gasoline, naphtha, crude oil, diesel fuel, wastes, and industrial solvents. (FAC ¶ 35.) Due to Defendants' conduct, Plaintiffs aver that they have had to incur numerous expenses investigating and remediating the Site's contamination despite the lack of credible evidence that Plaintiffs or their pipelines caused the contamination. (FAC ¶ 40.) According to Plaintiffs, though the Regional Board was aware that Defendants' Pipelines were in the area, they have generally refused to investigate or hold any of the Defendants liable for their contribution to the contamination.[6] (FAC ¶ 42.)
C. Procedural Background
Accordingly, on September 16, 2016, Plaintiffs initiated this action by filing a Complaint in this Court.[7] (Dkt. No. 1.) In February 2017, Defendants filed three Motions to Dismiss all or part of Plaintiffs' Complaint. (Dkt. Nos. 40, 45, 50.) Rather than oppose Defendants' Motions, Plaintiffs filed a First Amended Complaint ("FAC") on February 16, 2017. (See FAC.) Plaintiffs' FAC alleges ten causes of action: (1) Cost Recovery pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601(21) (against LACSD only); (2) declaratory relief under CERCLA (against LACSD only); (3) contribution (against all Defendants except LACSD); (4) declaratory relief (against all Defendants except LACSD); (5) equitable indemnity (against all Defendants except *1041 LACSD); (6) trespass (against all Defendants except LACSD); (7) private nuisance (against all Defendants except LACSD); (8) public nuisance (against all Defendants except LACSD); (9) nuisance per se (against all Defendants except LACSD); and, (10) violation of California Business and Professions Code section 17200 (the "UCL") (against all Defendants except LACSD). (See FAC ¶¶ 49-103.)
On March 2, 2017, the Moving Defendants filed their 12(b)(6) Motion to Dismiss, (see Dkt. No. 63), along with a Request for Judicial Notice, (see Dkt. No. 64 (hereinafter, "RJN") ). The next day, they filed their amended Motion. (See Getty MTD.) On March 9, 2017, Plains filed its 12(b)(1) Motion to Dismiss. (See Plains MTD.) On March 20, 2017, Plaintiffs filed their Oppositions. (See Dkt. Nos. 69, (hereinafter, "Getty Opp'n"), 70 (hereinafter, "Plains Opp'n").) On March 27, 2017, the Moving Defendants replied.[8] (Dkt. Nos. 71 (hereinafter, "Getty Reply"), 72.)
III. REQUEST FOR JUDICIAL NOTICE
As mentioned above, along with their 12(b)(6) Motion, Defendants filed a Request for Judicial Notice. (See RJN.) When deciding a motion to dismiss, a court typically does not look beyond the complaint in order to avoid converting a motion to dismiss into a motion for summary judgment. See Mack v. S. Bay Beer Distribs., Inc. , 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino , 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). Notwithstanding this precept, when deciding a motion to dismiss, a court may properly consider: (1) material which is included as part of the complaint; (2) documents incorporated by reference into the complaint; and, (3) material subject to judicial notice pursuant to Federal Rule of Evidence 201. See United States v. Ritchie , 342 F.3d 903, 908 (9th Cir. 2003) ; Lee v. City of Los Angeles , 250 F.3d 668, 688-89 (9th Cir. 2001). Rule 201 provides that a court may judicially notice a fact that (1) "is generally known within the trial court's territorial jurisdiction," or, (2) may "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." See Fed. R. Evid. 201(c)(2) ; In re Icenhower , 755 F.3d 1130, 1142 (9th Cir. 2014).
Defendants request that the Court take judicial notice of one fact: that *1042 the relevant portion of Golden Avenue that lies between Baker Street and West Wardlow Road is a public street owned by the City of Long Beach, California. (See RJN.) Along with their Request, Defendants provide a Los Angeles County Assessor's Map of the area. (See RJN, Ex. 1.) Courts may judicially notice locations using maps and satellite images. See United States v. Perea-Rey , 680 F.3d 1179, 1182 n.1 (9th Cir. 2012) ("We take judicial notice of a Google map and satellite image as a source whose accuracy cannot reasonably be questioned, at least for the purpose of determining the general location of the home." (alteration and internal quotation marks omitted) ); Carter v. Nat'l R.R. Passenger Corp. , No. C-13-00809 JCS, 2013 WL 3300495, at *5 (N.D. Cal. June 28, 2013) (taking judicial notice of location of assessor's map "as a matter of public record"); see also Boyce Motor Lines v. United States , 342 U.S. 337, 344, 72 S.Ct. 329, 96 L.Ed. 367 (1952) (Jackson, J., dissenting) ("We may, of course, take judicial notice of geography."). Accordingly, the Court may take judicial notice of Golden Avenue's location as a fact that's accuracy may be readily determined by a source whose accuracy cannot reasonably be questioned.
As to the ownership of Golden Avenue, Defendants rely on a portion of the Regional Board's Order in which the Regional Board defines the Site as "a public street owned by the City of Long Beach." (See Mot., Ex. A ¶ 4.) As noted above, the Court may consider documents that are incorporated by reference into the plaintiff's complaint. See Ritchie , 342 F.3d at 908. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." Id. "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." Id. Here, the Regional Board's Order forms the basis for Plaintiffs' claims as it is this Order that Plaintiffs contend has caused them significant harm and unlawfully required them to investigate and repair the contamination at the Site. (See, e.g. , FAC ¶¶ 30-32, 35-36.) Accordingly, the Court considers the Order incorporated by reference into Plaintiffs' FAC and assumes its contents are true for the purposes of the instant Motions.
IV. LEGAL STANDARD
A. Rule 12(b)(1)
Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss the plaintiff's claims for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). Federal courts are of limited jurisdiction and possess only that jurisdiction as authorized by the Constitution and federal statute. See Kokkonen v. Guardian Life Ins. Co. of Am. , 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Pursuant to 28 U.S.C. § 1331, federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. When federal courts address claims arising under federal question jurisdiction, they may also exercise supplemental jurisdiction over state law claims that "are so related to claims in the action ... that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, § 1367(c) provides that federal courts may decline to exercise supplemental jurisdiction over a state law claim if: (1) "the claim raises a novel or complex issue of State law"; (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction";
*1043 (3) the court "has dismissed all claims over which it has original jurisdiction"; or, (4) there are "exceptional circumstances" that provide "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." United Mine Workers of Am. v. Gibbs , 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). "Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims ...." Id.
B. Rule 12(b)(6)
Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility' " that the plaintiff is entitled to relief. Id. (quoting Twombly , 550 U.S. at 557, 127 S.Ct. 1955 ).
In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-pronged approach: first, the court must discount conclusory statements, which are not presumed to be true; and then, assuming any factual allegations are true, the court shall determine "whether they plausibly give rise to entitlement to relief." See ids="3556136" index="39" url="https://cite.case.law/us/550/544/#p555">id. at 679, 129 S.Ct. 1937 ; accord Chavez v. United States , 683 F.3d 1102, 1108 (9th Cir. 2012). A court should consider the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd. , 551 U.S. 308, 322-23, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ; Lee , 250 F.3d at 688.
Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. Manzarek v. St. Paul Fire & Marine Ins. Co. , 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.").
V. DISCUSSION
The Moving Defendants bring two separate Motions to Dismiss. (See Getty MTD; Plains MTD.) First, they urge the Court to refuse to exercise supplemental jurisdictional over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c). (See Plains MTD.) Second, they argue that, even if the Court chooses to exercise supplemental jurisdiction, Plaintiffs have failed to plead viable state law claims. (See Getty MTD.) The Court first determines whether exercising its supplemental jurisdiction over *1044 Plaintiffs' state law claims is appropriate in this case.
A. Whether the Court Should Exercise Supplemental Jurisdiction
As explained above, 28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, under § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim" if, among other reasons, "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). Here, the Moving Defendants concede that Plaintiffs' state law claims "arise from the same nucleus of operative facts." (Plains MTD at 5.) Nonetheless, they argue that Plaintiffs' state law claims predominate over their federal CERCLA claims. (See Plains MTD.)
State law claims can predominate over federal law claims "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." Gibbs , 383 U.S. at 726, 86 S.Ct. 1130. When determining whether to exercise supplemental jurisdiction, the decision is driven by "considerations of judicial economy, convenience and fairness to litigants." Id. ; see also Acri v. Varian Assocs., Inc. , 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (explaining that decision whether to exercise supplemental jurisdiction "is informed by the Gibbs values of economy, convenience, fairness, and comity" (internal quotation marks omitted) ).
The Moving Defendants argue that Plaintiffs' state law claims predominate here because: (1) the scope of Plaintiffs' CERCLA claims and their state law claims are different; (2) the terms of proof for the claims are different; and, (3) the remedies available under federal and state law are different. (See Plains MTD at 8-11.) In response, Plaintiffs contend that the Moving Defendants' Motion is premature, because Plaintiffs intend to add OOI as an additional defendant and to bring federal CERCLA claims, federal Resource Conservation and Recovery Act ("RCRA") claims, as well as the same state law claims against OOI. (See Plains Opp'n at 16.) Thus, according to Plaintiffs, "because the same common nucleus of operative facts will apply to both the federal and state law claims against OOI, the calculus for whether state law issues will predominate in this action will necessarily be altered." (Id. )
The Court finds that, in this case, the state law claims do not predominate over Plaintiffs' CERCLA claims. The Ninth Circuit's decision in State of California ex rel. California Department of Health Services v. B & R Davis Fertilizers, Inc. , 29 F.3d 634, 1994 WL 377788 (9th Cir. 1994) (Table), is instructive. In 1983, the Yolo County Health Department ("YCHD") discovered hazardous agricultural chemical residue in pits on property called the "Frontier Site." Id. at *1. Over the next several years, the YCHD, the California Superior Court, the Regional Water Quality Control Board, and the State Department of Toxic Substances Control (the "Department") issued multiple cleanup orders, with which the property owners failed to comply. Id. In 1991, the Department filed suit against the owners of the Frontier Site, seeking (1) cost recovery under CERCLA, and, (2) injunctive relief under the California Hazardous Substances Account Act and California nuisance law. Id. at *2. The district court *1045 granted judgment in favor of the Department. ( Id. )
On appeal, the property owners argued that the district court lacked subject matter jurisdiction over the Department's state law claims. Id. The Ninth Circuit disagreed, explaining that the district court "had original and exclusive jurisdiction over the CERCLA claim" and that "[b]ecause the state claims arise out of the same set of operative facts as the CERCLA claim and involved the same contaminated property, the court also had the power to hear the state law claims." Id. at *3. Specifically, the court held that "the state law claims [did] not predominate over the federal claims," even though state law provided some remedies that CERCLA did not. Id. ; see also White v. County of Newberry , 985 F.2d 168, 172 (4th Cir. 1993) (affirming district court's exercise of supplemental jurisdiction over the plaintiffs' inverse condemnation claim along with their CERCLA claim where the two claims shared a common element-the disposal of hazardous substances resulting in contamination-and despite the state law claim's broader right to recovery). Thus, though Plaintiffs bring state laws claims that have separate remedies, the Ninth Circuit has found that such claims do not necessarily substantially predominate over CERCLA claims.
Here, it is undisputed that Plaintiffs' CERCLA and state law claims arise from the same event-the contamination of the Site. (See Plains MTD at 5.) While the Moving Defendants argue that the scope of the claims is different, (see Plains MTD at 8-9), the Court disagrees. All of Plaintiffs' claims seek the same principal relief-a finding of liability against various alleged tortfeasors for the contamination at the Site. Though Plaintiffs' CERCLA claims against LACSD may involve contamination arising from specific LACSD-owned pipelines that allegedly carried wastewater containing benzene and Plaintiffs' state law claims against the Moving Defendants involve additional pipelines and other potential contaminates, the scope of the claims is similar: whether Defendants' Pipelines have caused contamination at the Site and, therefore, are liable to Plaintiffs.
The Moving Defendants note that Plaintiffs' nuisance claims require proof of whether Defendants' alleged conduct has "resulted in adverse impacts to the adjacent community"; that Plaintiffs' nuisance per se claims requires proof that Defendants' Pipelines have violated various statutes or regulations; and, that Plaintiffs' UCL claim addresses whether Defendants have gained an unfair business advantage by avoiding the costs of environmental compliance. (Plains MTD at 8-9.) Nonetheless, the Court finds that these additional requirements do not indicate that Plaintiffs' state law claims substantially predominate over their CERCLA claims. As the court held in White , where Plaintiffs' claims share a common element of proof, the state law claims do not necessarily substantially predominate. See White , 985 F.2d at 172.
Plaintiffs' CERCLA claims require Plaintiffs to establish that LACSD owned and operated a vessel or facility, disposed hazardous substances, and that the release of those hazardous substances "cause[d] the incurrence of response costs." 42 U.S.C. § 9607(a). CERCLA defines "Release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." 42 U.S.C. § 9601(22).
Plaintiffs' nuisance claims also require that Plaintiffs establish that the Moving Defendants' conduct caused the contamination of the Site. See *1046 Redev. Agency of City of Stockton v. BNSF Ry. Co. , 643 F.3d 668, 675 (9th Cir. 2011) (addressing whether defendants were liable for nuisance under California law based on land contamination). Similarly, Plaintiffs' contribution, indemnity, and trespass claims require proof of Defendants' fault for the alleged contamination.[9] See Expressions at Rancho Niguel Ass'n v. Ahmanson Devs., Inc. , 86 Cal. App. 4th 1135, 1139, 103 Cal.Rptr.2d 895 (2001) ("The elements of a cause of action for indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible." (emphasis in original) ); Mangini v. Aerojet-Gen. Corp. , 230 Cal. App. 3d 1125, 1141, 281 Cal.Rptr. 827 (1991) (finding that trespass claim could proceed where claim was based on the defendant allegedly depositing hazardous material on property). Finally, as to Plaintiffs' UCL claim, "[b]y proscribing 'any unlawful' business practice, 'section 17200 borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co. , 20 Cal. 4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (citations omitted). Thus, Plaintiffs' claims all share at least one common element-whether the various Defendants are responsible for the contamination of hazardous materials at the Site-and will involve substantial overlapping evidence regarding the Site's contamination. See Picard v. Bay Area Reg'l Transit Dist. , 823 F.Supp. 1519, 1527 (N.D. Cal. 1993) (finding state law claims did not substantially predominate because "[w]hile different legal theories [were] involved, each [would] require virtually the same evidentiary presentation at trial").
Lastly, the Moving Defendants argue that CERCLA's remedies are different than Plaintiffs' state law claims. (See Plains MTD at 10-11.) Specifically, CERCLA permits only the recovery of Plaintiffs' response costs, see 42 U.S.C. § 9607(a)(4), while the various state law claims allow for consequential, incidental, and general damages, (see Plains MTD at 10). "Although 'the availability of damages under state law means that the state-law claims present a slightly larger scope of issues and offer more comprehensive remedies,' this does not warrant declining supplemental jurisdiction." Kohler v. Islands Rests., LP , 956 F.Supp.2d 1170, 1176 (S.D. Cal. 2013) (quoting Kohler v. Rednap, Inc. , 794 F.Supp.2d 1091, 1096 (C.D. Cal. 2011) ). Moreover, as addressed above, the Ninth Circuit has held that despite the availability of additional remedies under state law, state law claims do not necessarily substantially predominate over CERCLA claims. See B & R Davis , 29 F.3d 634, at *3. Thus, the Court finds that while Plaintiffs may be entitled to slightly more expansive remedies based on its state law claims, this factor alone does not require the Court to decline to exercise supplemental jurisdiction.
Moreover, the Court finds there are two additional reasons supporting the exercise of supplemental jurisdiction in this case. First, even if Plaintiffs' state law claims substantially predominated over their CERCLA claims, the Court "would retain jurisdiction based on the 'values of economy, convenience, fairness, and comity.' " Id. (citation omitted). Where, as here, Plaintiffs are seeking indemnity from various defendants based on one alleged injury, it would be inefficient and inconvenient to have two courts in different jurisdictions determine the scope of each defendant's *1047 fault. And, as Plaintiffs note, because they are required to bring their CERCLA claims in federal court, if the Court declined to exercise supplemental jurisdiction over Plaintiffs' state law claims, both this Court and the state court would be required to determine each Defendants' fault without all Defendants present to defend themselves.[10] (See Plains Opp'n at 18.)
Second, though still speculative at this stage, Plaintiffs indicate that they intend to join OOI as a Defendant in this action and to bring both federal and state law claims against it.[11] (See Plains Opp'n at 21.) This representation also supports the exercise of supplemental jurisdiction in this case. It would be judicially inefficient and burdensome to OOI to require Plaintiffs to bring their federal claims against OOI in this forum but to bring their state law claims based on the same conduct in a different forum. Further, once the Court is addressing Plaintiffs' state law claims as to OOI, it would be entirely duplicative to require a second court to determine the same state law claims based on the same injury against different Defendants. Therefore, in sum, the Court finds that Plaintiffs' state law claims do "not so substantially predominate as to justify the judicial inefficiency that would result if this Court were to decline to exercise supplemental jurisdiction." See Competitive Techs. v. Fujitsu Ltd. , 286 F.Supp.2d 1118, 1143 (N.D. Cal. 2003) ; see also Carnegie-Mellon Univ. v. Cohill , 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[T]he doctrine of pendent jurisdiction ... is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.").
Therefore, the Court DENIES the Moving Defendants' Motion to Dismiss for lack of subject matter jurisdiction.
B. Whether Plaintiffs Have Sufficiently Pleaded Their State Law Claims
Next, the Moving Defendants argue that, even if the Court exercises supplemental jurisdiction, Plaintiffs have failed to adequately plead their state law claims. (See Plains MTD.) As noted above, Plaintiffs bring eight state law claims. (See FAC.) The Court addresses each in turn.
1. Plaintiffs' Contribution Claim
Plaintiffs' third cause of action is a claim for contribution, in which Plaintiffs allege that Defendants (other than LACSD) are jointly responsible for any costs incurred by the cleanup and remediation of the Site. (See FAC ¶¶ 69-70.) The Moving Defendants argue that Plaintiffs have failed to state viable contribution claim against them because the Plaintiffs and the Moving Defendants are not "co-obligors" who are jointly liable for the *1048 Site's contamination. (Getty MTD at 5-6.) The Moving Defendants' raise three arguments. First, the Moving Defendants argue that Plaintiffs fail to allege that Plaintiffs themselves are obligors under the Order because they "allege that they are not responsible for contamination at the Site." (Getty MTD at 5-6.) Second, they argue that Plaintiffs are not obligors under the terms of the Order because the Regional Board ordered BP to cleanup and remediate the Site-not Plaintiffs. (See Getty MTD at 6.) Third, they argue that, regardless, the Moving Defendants are not obligors because they have never been required to participate in the cleanup or remediation of the Site. (See Getty MTD at 6; Getty Reply at 3.)
The Court finds the Moving Defendants' third argument persuasive. A claim for equitable contribution arises "[w]here two or more parties are jointly liable on an obligation and one of them makes payments of more than its share." Sullins v. Exxon/Mobil Corp. , 729 F.Supp.2d 1129, 1139 (N.D. Cal. 2010). In that case, "the one paying comes into possession of a new obligation against the others for their proportion of what it has paid for them." Id. "The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by co-obligors and to prevent one obligor from benefitting at the expense of the others." Id. A threshold requirement for a contribution claim, however, is that "the parties be connected by a joint obligation." Id. Thus, for example, in Sullins , the court held that where multiple parties were named on a cleanup order issued by the City of Livermore and the County of Alameda, Department of Environmental Health Services, Environmental Protection Division, the plaintiff, one of the named parties on the order, had a viable contribution claim against the other parties named in the order. Id.
Here, however, Plaintiffs allegations fail to plead a key component: a joint obligation shared by Plaintiffs and the Moving Defendants. While Plaintiffs argue that the Moving Defendants should be liable for the cleanup and remediation of the Site, Plaintiffs have not alleged that the Moving Defendants have actually incurred any such obligation at this stage. For instance, Plaintiffs concede that the Moving Defendants were not named in the Order and that the Regional Board has "failed or refused to investigate or hold liable any of the Defendants for their contribution to the presence of the contaminants at the Site." (See FAC ¶ 42 (original formatting omitted).) Plaintiffs have not otherwise alleged how the Moving Defendants currently have-rather than should have-an obligation to cleanup and remediate the Site. See Fireman's Fund Ins. Co. v. Md. Cas. Co. , 65 Cal. App. 4th 1279, 1293, 77 Cal.Rptr.2d 296 (1998) (defining equitable contribution as "the right to recover ... from a co-obligor who shares such liability with the party seeking contribution" (emphases in original) ); see also Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO , 451 U.S. 77, 87-88, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) ("Typically, a right to contribution is recognized when two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability."). Thus, as contribution is intended to protect parties "to a joint, or joint and several obligation," see Cal. Civ. Proc. Code § 1432, and Plaintiffs have not alleged that they share any such joint obligation with the Moving Defendants, Plaintiffs have failed to state a claim for contribution. Therefore, Plaintiffs' contribution claim is DISMISSED without prejudice .
*1049 2. Plaintiffs' Declaratory Relief Claim
The Moving Defendants argue that the Court should dismiss Plaintiffs' declaratory relief claim because "Plaintiffs fail to establish any plausible claim against Moving Defendants for which relief can be granted." (Getty MTD at 6.) Declaratory relief is not a stand-alone cause of action; instead, it must be premised on another independent claim for relief. See Nguyen v. JP Morgan Chase Bank , No. SACV 11-01908 DOC (ANx), 2012 WL 294936, at *4 (C.D. Cal. Feb. 1, 2012) ("A claim for declaratory relief is not a stand-alone claim, but rather depends upon whether or not Plaintiff states some other substantive basis for liability."). As explained below, the Court finds that Plaintiffs have stated viable claims against the Moving Defendants. As this is the Moving Defendants' only argument in support of dismissal of Plaintiff's declaratory relief claim, the Court DENIES the Moving Defendants' Motion as to this claim.
3. Plaintiffs' Equitable Indemnity Claim
Similar to contribution, "[t]he right to equitable indemnity arises from the principle that an individual who has paid damages which ought to have been paid by another wrongdoer may recover from that wrongdoer." Sullins , 729 F.Supp.2d at 1139 (citing Bush v. Superior Court , 10 Cal. App. 4th 1374, 1380, 13 Cal.Rptr.2d 382 (1992) ). "The cause of action for equitable indemnity accrues when the indemnitee suffers a loss through payment of an adverse judgment or settlement." Id. (citing W. Steamship Lines, Inc. v. San Pedro Peninsula Hosp. , 8 Cal. 4th 100, 110, 32 Cal.Rptr.2d 263, 876 P.2d 1062 (1994) ); see also Christian v. County of Los Angeles , 176 Cal. App. 3d 466, 471, 222 Cal.Rptr. 76 (1986) ("[A] fundamental prerequisite to an action for partial or total equitable indemnity is an actual monetary loss through payment of a judgment or settlement."). Plaintiffs here allege no loss through the payment of an adverse judgment or settlement.[12] Therefore, Plaintiffs' equitable indemnity claim is DISMISSED without prejudice .
4. Plaintiffs' Trespass Claim
Next, the Moving Defendants challenge the sufficiency of Plaintiffs' trespass claim. (See Getty MTD at 7-9.) "Trespass to property is the unlawful interference with its possession." Elton v. Anheuser-Busch Beverage Grp., Inc. , 50 Cal. App. 4th 1301, 1306, 58 Cal.Rptr.2d 303 (1996) (citation omitted). First, the Moving Defendants argue that Plaintiffs have not adequately alleged that they have possession of the Site. (See Getty MTD at 7-8.) Plaintiffs allege that they "maintain[ ] easements, permits, rights of way, or franchise agreements to control, use, and operate the Site." (FAC ¶ 28.) An easement holder has a possessory interest in the land over which the easement lies. See City of Los Angeles v. San Pedro Boat Works , 635 F.3d 440, 449-50 (9th Cir. 2011) (defining a possessory interest as, among others, the interest of an easement *1050 holder). Thus, while Plaintiffs do not use the word "possess," the Court finds that their allegations that they "maintain" property interests-including easements-at the Site is sufficient to establish at the pleading stage that Plaintiffs have a possessory interest in the Site.[13]
Next, the Moving Defendants contend that "Plaintiffs fail to allege where the claimed trespass occurred, how the easements, permits, rights of way, and franchise agreements constitute a possessory interest in the land at issue, and how Moving Defendants interfered with that possessory interest." (Getty MTD at 8.) The Moving Defendants misconstrue a trespass claim's requirements. To constitute a trespass, "[t]he interference need not take the form of a personal entry onto the property by the wrongdoer," but, instead, may include such forms of intrusion as "ginning lint, cement dust, and even invisible particles of fluoride compounds." Elton , 50 Cal. App. 4th at 1306, 58 Cal.Rptr.2d 303 (citations omitted). Here, Plaintiffs have alleged that the Moving Defendants interfered with Plaintiffs' possessory interest in the Site through the alleged release of toxic materials from their pipelines that infected the Site. (See FAC ¶¶ 80-82.) Such intrusions may constitute trespass. See Mangini , 230 Cal. App. 3d at 1141-42, 281 Cal.Rptr. 827 (finding a trespass claim could lie where the plaintiff alleged that the defendant interfered with his right to possession "by wrongfully depositing hazardous substances on the Subject Property and failing and refusing to remove them at any time since plaintiffs acquired the Subject Property" (internal quotation marks omitted) ); see also Coppola v. Smith , 935 F.Supp.2d 993, 1020 (E.D. Cal. 2013) (explaining that "the failure to clean up contamination that causes ongoing damage to property" can constitute a trespass). Therefore, the contaminants' presence at the Site constitutes the requisite interference with Plaintiffs' possessory interest.
Next, the Moving Defendants argue that the City of Long Beach owns the Site-a fact of which the Court took judicial notice above and that Plaintiffs do not appear to dispute-and that Plaintiffs have not adequately alleged what damage Defendants' alleged trespass has caused Plaintiffs' specific property interest. (See Getty MTD at 8-9.) "The cause of action for trespass is designed to protect possessory -not necessarily ownership-interests in land from unlawful interference." Smith v. Cap Concrete, Inc. , 133 Cal. App. 3d 769, 774, 184 Cal.Rptr. 308 (1983). Thus, the fact that Plaintiffs do not own the Site does not doom their trespass claim. Moreover, as mentioned above, Plaintiffs allege that they maintain "easements, permits, rights of way, or franchise agreements to control, use and operate the Site." (FAC ¶ 28.) Plaintiffs aver that it is with their use and enjoyment of these possessory interests that the Moving Defendants' alleged trespass has interfered. (See FAC ¶ 82.) Accordingly, the Court finds that Plaintiffs have adequately pleaded facts indicating that the Moving Defendants' alleged release of toxic or hazardous materials constitute trespass. The Moving *1051 Defendants' Motion to Dismiss Plaintiffs' Trespass claim is DENIED .
5. Plaintiffs' Private Nuisance Claim
The Moving Defendants challenge Plaintiffs' private nuisance claim on two grounds: (1) it is not pleaded with sufficient specificity; and, (2) Plaintiffs may not bring a private nuisance claim because they do not own the Site. (Getty MTD at 9-10.) California Civil Code section 4379 defines a nuisance, in relevant part, as "[a]nything which is injurious to health, including, but not limited to, the illegal sale of control substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Cal. Civ. Code § 3479. "A nuisance may be both public and private, but to proceed on a private nuisance theory, the plaintiff must prove an injury specifically referable to the use and enjoyment of his land. The injury, however, need not be different in kind from that suffered by the general public." Monks v. City of Rancho Palos Verdes , 167 Cal. App. 4th 263, 302, 84 Cal.Rptr.3d 75 (2008).
As a threshold matter, the Moving Defendants contend that Plaintiffs may not bring a nuisance claim because they do not own the Site. (See Getty MTD at 10.) The Court disagrees as it does not appear that California law adopts such a narrow view of who may bring nuisance actions. Rather, "a private nuisance is a civil wrong based on disturbance of rights in land ." Venuto v. Owens-Corning Fiberglas Corp. , 22 Cal. App. 3d 116, 124, 99 Cal.Rptr. 350 (1971) (emphasis added). For instance, in Birke v. Oakwood Worldwide , 169 Cal. App. 4th 1540, 1551, 87 Cal.Rptr.3d 602 (2009), the court held that a renting tenant's daughter had standing to bring a private nuisance claim. As explained above, Plaintiffs allege here that they have a property interest in the Site by maintaining "easements, permits, rights of way, or franchise agreements to control, use and operate the Site."[14] (FAC ¶ 28.) "An easement, unlike a license, creates an interest in the land-an incorporeal interest." Eastman v. Piper , 68 Cal. App. 554, 560, 229 P. 1002 (1924). Thus, as Plaintiffs have alleged that they have an interest in the Site, and a private nuisance claim addresses disturbances of "rights in land," the Court finds that Plaintiffs may bring a private nuisance claim here.
The Court finds that Plaintiffs have adequately alleged facts to establish a private nuisance. "So long as the interference is substantial and unreasonable, and ... would be offensive or inconvenient to the normal person, virtually any disturbance of the enjoyment of the property may amount to a nuisance."[15]
*1052 Koll-Irvine Ctr. Prop. Owners Ass'n v. County of Orange , 24 Cal. App. 4th 1036, 1041, 29 Cal.Rptr.2d 664 (1994) (citation omitted); see also Mangini , 230 Cal. App. 3d at 1136, 281 Cal.Rptr. 827 ("More modern California cases have recognized that, 'The statutory definition of nuisance appears to be broad enough to encompass almost every conceivable type of interference with the enjoyment or use of land or property.' " (citation omitted) ). According to the Moving Defendants, Plaintiffs have not provided specific facts indicating how the Moving Defendants' alleged conduct constitutes a private nuisance. The Court disagrees. Plaintiffs' FAC provides facts regarding the alleged release of hazardous substances from the Moving Defendants' Pipelines that has affected the Site (and subsequently Plaintiffs' property interest in the Site). (See FAC ¶¶ 31, 38, 40.) Further, Plaintiffs claim that their use and enjoyment of their property has been affected because Plaintiffs have expended significant costs and expenses complying with the Order to cleanup the Site. (See FAC ¶ 48.)
Plaintiffs allegations if accepted as true-as they must be at this stage-indicate that the Moving Defendants' leaking pipelines constitute a substantial and unreasonable disturbance in the enjoyment of Plaintiffs' property interest in the Site. See Mangini , 230 Cal. App. 3d at 1136, 281 Cal.Rptr. 827 ("Numerous cases have ... sanctioned recovery on a nuisance theory for direct injury to a plaintiff's property."); see also BNSF , 643 F.3d at 673 (noting that "the soil and groundwater contamination in this case constitutes a nuisance"). Moreover, "[a]n interference need not directly damage the land or prevent its use to constitute a nuisance." Koll-Irvine , 24 Cal. App. 4th at 1041, 29 Cal.Rptr.2d 664. Thus, contrary to the Moving Defendants' contention, Plaintiffs are not required to plead facts indicating that the contamination has prevented Plaintiffs from using their pipelines; rather, Plaintiffs' allegations regarding the Moving Defendants' leaking pipelines causing damage to the Site and requiring Plaintiffs to incur expenses performing its cleanup and remediation is sufficient to establish that the contamination has substantially and unreasonably affected their use and enjoyment of the Site. See In re Burbank Envtl. Litig. , 42 F.Supp.2d 976, 984 (C.D. Cal. 1998) (finding that the plaintiffs alleged a substantial interference with their use and enjoyment of their property where they claimed that their property was damaged by flying debris and dust); see also Newhall Land & Farming Co. v. Superior Court , 19 Cal. App. 4th 334, 342, 23 Cal.Rptr.2d 377 (1993) (finding the plaintiff stated a claim for private nuisance where hazardous substances were found in the soil and polluted groundwater and the plaintiff "spent money investigating this pollution"). Therefore, the Court DENIES the Moving Defendants' Motion to Dismiss Plaintiffs' private nuisance claim.
6. Plaintiffs' Public Nuisance Claim
"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480. When determining a defendant's liability for a public nuisance claim, "the critical question is whether the defendant created or assisted in the creation of the nuisance." City of Modesto Redev. Agency v. Superior Court , 119 Cal. App. 4th 28, 38, 13 Cal.Rptr.3d 865 (2004). The Moving Defendants contend that this examination requires a plaintiff to allege facts "regarding affirmative steps" by the Moving Defendants that created the contamination. (See Getty MTD at 11.) In *1053 their FAC, Plaintiffs allege that "the Environmentally Substandard Conditions caused by Defendants' Pipelines allowed contamination at the Site either intentionally or negligently, and through the willful acts and/or omissions of the Defendants." (FAC ¶ 40.) Plaintiffs also provide details regarding the pipelines that each Defendant owns or owned running beneath portions of the Site and claims that each pipeline carried hazardous materials. (See FAC ¶ 20.)
In BNSF , the Ninth Circuit explained the difference between passive conduct, such as manufacturers' conduct when they have "merely placed hazardous substances in the stream of commerce," which may not give rise to nuisance liability, and active conduct by "those who took affirmative steps directed toward the improper discharge of hazardous wastes," which may. BNSF , 643 F.3d at 674 (alterations and internal quotation marks omitted). In other words, if a defendant's conduct is "not active, affirmative, or knowing," it may not "create or assist in the creation of the nuisance." Id. (internal quotation marks omitted). However, those who "release [hazardous materials] into the environment," "affirmatively direct its flow or knowingly permit it to migrate," or install "a system designed to move or dispose of hazardous waste" may have participated in affirmative conduct. Id. at 674-75 ; cf. id. at 675 (finding that because the defendant installed a French drain to drain water-not contaminants-it could not be liable for nuisance). Here, as indicated above, Plaintiffs have alleged that Defendants are affirmatively responsible for the proper draining of hazardous materials through the Site and it was their failure-either negligent or intentional-that led to the Site's contamination. (See FAC ¶ 40.) Accordingly, the Court finds that Plaintiffs have adequately pleaded affirmative conduct by the Moving Defendants' to support a nuisance claim.
"Only a person who is specially injured by a nuisance may bring an action for public (as opposed to private) nuisance." Schaeffer v. Gregory Vill. Partners, L.P. , 105 F.Supp.3d 951, 966 (N.D. Cal. 2015). "In other words, the plaintiff's harm must be different from the type of harm suffered by the general public." Id. The Moving Defendants argue that Plaintiffs' only alleged unique harm is the costs associated with cleanup of the Site, which, according to the Moving Defendants, Plaintiffs have voluntarily assumed. (See Getty MTD at 11-12.)
Though the Order explicitly requires BP to cleanup and remediate the Site, (see FAC ¶ 30), Plaintiffs adequately allege that Plaintiffs had purchased the relevant pipelines and the associated responsibilities from BP before the Order was issued, (see id. ). Specifically, Plaintiffs allege that they "assumed BP's investigation and remediation responsibilities at the Site effective June 1, 2013," and that the Regional Board issued the Order on September 18, 2014. (Id. ) At the motion to dismiss stage, the Court assumes all allegations in the Plaintiffs' Complaint are true. See Twombly , 550 U.S. at 589, 127 S.Ct. 1955. Thus, the Court assumes at this stage that Plaintiffs were transferred the ownership interest in the relevant pipelines and the cleanup duties associated with them prior to the Order's issuance. Therefore, Plaintiffs did not voluntarily assume the duty to comply with the Regional Board's Order; rather, it appears that they were contractually bound to do so.
The Moving Defendants rely on Rose v. Union Oil Co. of California , No. C 97-3808 FMS, 1999 WL 51819 (N.D. Cal. Feb. 1, 1999), for the proposition that "voluntarily incurred costs do not suffice to satisfy the special injury requirement for public nuisance *1054 standing." (Getty MTD at 12.) Rose is distinguishable from the instant case, however. There, the plaintiff has purchased property in order to operate an auto body business. Rose , 1999 WL 51819, at *1. But "[n]o one, including Mechanics Bank which funded the mortgage, required the [plaintiffs] to investigate the environmental condition of the property." Id. Nonetheless, the plaintiffs chose to retain an engineering company to conduct an environmental assessment. Id. This assessment revealed that the soil showed detectable levels of petroleum constituents. Id. Nonetheless, neither the County Health Services Department nor the California Regional Water Quality Control Board required the plaintiffs to investigate or remediate the property. Id. Regardless, the plaintiffs claimed that the costs they incurred in investigating and remediating the property constituted sufficient injury to support their public nuisance claim. Id. at *5. The Court disagreed, explaining that their costs did not constitute an injury because they were not "required by any public entity to conduct environmental testing of their property." Id.
Here, unlike Rose , it is undisputed that a public entity-namely, the Regional Board-has ordered the cleanup and remediation of the Site. (See FAC ¶ 28.) The only dispute is over who is required to perform the cleanup. As explained above, because Plaintiffs have pleaded that they are the current owners of BP's pipelines and have been assigned the rights and responsibilities associated with BP's ownership interest at the Site, Plaintiffs appear to be the parties who are required to comply with the Regional Board's Order. Accordingly, as this situation is different than that in Rose where the Plaintiffs-with no obligation whatsoever-voluntarily incurred investigation and remediation costs, the Court finds Rose inapposite.
Finally, the Moving Defendants contend that Plaintiffs have failed to allege that the Plaintiffs "have suffered an injury to person or property in common with the public." (Getty MTD at 12.) In other words, the Moving Defendants argue that though the injury at issue is the contamination of groundwater, "Plaintiffs have not alleged that they use the groundwater or that they are directly harmed by pollution of the groundwater." (Getty Reply at 7.) The Moving Defendants misconstrue the law, however.
"Pollution of water constitutes a public nuisance." Newhall , 19 Cal. App. 4th at 341, 23 Cal.Rptr.2d 377 ; see also Schaeffer , 105 F.Supp.3d at 966-67 (finding that allegations of a contamination that "infiltrated the soil, soil vapor, and groundwater" constituted a public nuisance). Thus, as Plaintiffs allege that the Site's contamination allegedly due to Defendants' Pipelines has contaminated the groundwater in and surrounding the Site, Plaintiffs have adequately pleaded a public nuisance. (See FAC ¶ 90.) Under California law, public nuisances are those which affect "public rights." See Monks , 167 Cal. App. 4th at 300, 84 Cal.Rptr.3d 75. A public right "is one common to all members of the general public." Id. (internal quotation marks omitted). "It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured." Id. (internal quotation marks omitted).
Therefore, a public nuisance is one that, by definition, affects the public at large. See Monks , 167 Cal. App. 4th at 300, 84 Cal.Rptr.3d 75 ; see also Cal. Civ. Code § 3480. Plaintiffs have a public right under California law to maintain their property interest at the Site without contaminated groundwater. Thus, the contaminated groundwater infecting the Site injures Plaintiffs by affecting a public right regardless *1055 of how they use the groundwater.[16] Therefore, the Moving Defendants' argument that Plaintiffs have not adequately alleged an injury arising from the contaminated groundwater is unavailing.[17]
Before a plaintiff may bring a public nuisance claim, however, it must allege that it has "suffered harm that was different from the type of harm suffered by the general public." Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc. , 805 F.Supp.2d 888, 901 (2011). Under the requirement that a public nuisance be 'specially injurious' to a plaintiff, courts have recognized that 'a plaintiff suing on this basis must show special injury to himself of a character different in kind -not merely in degree-from that suffered by the general public.' " Backus v. Gen. Mills, Inc. , 122 F.Supp.3d 909, 930 (N.D. Cal. 2015) (quoting Institoris v. City of Los Angeles , 210 Cal. App. 3d 10, 20, 258 Cal.Rptr. 418 (1989) ). Here, Plaintiffs allege that they have suffered a special injury because they have been required to incur costs and expenses to cleanup and remediate the Site-costs that were not borne by the public at large. (See FAC ¶ 92.) The Court finds that this constitutes an injury unique to Plaintiffs sufficient to support a public nuisance theory.
Accordingly, the Court DENIES the Moving Defendants' Motion to Dismiss Plaintiffs' public nuisance claim.
7. Plaintiffs' Nuisance Per Se Claim
"[T]o be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law." Beck Dev. Co. v. S. Pac. Transp. Co. , 44 Cal. App. 4th 1160, 1207, 52 Cal.Rptr.2d 518 (1996). The Moving Defendants argue that Plaintiffs have failed to identify any law that renders the Site's contamination a per se nuisance. (See Getty MTD at 12.) In their Opposition, Plaintiffs cite California Water Code section 13304 and California Health and Safety Code section 5411 as the applicable statutory provisions creating a per se violation. (See Getty Opp'n at 23.) First, Plaintiffs do not include any allegations regarding Health and Safety Code section 5411 in their FAC. (See FAC.) Accordingly, the Court finds that section 5411 cannot support Plaintiffs' nuisance per se claim. See Schneider v. Cal. Dep't of Corr. , 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original) ).
As to Water Code section 13304, however, the Court finds that it may support a nuisance per se claim. See *1056 Newhall , 19 Cal. App. 4th at 341, 23 Cal.Rptr.2d 377 ("Water pollution occurring as a result of treatment or discharge of wastes in violation of Water Code section 13000, et seq. is a public nuisance per se."). Water Code section 13050(m) defines "nuisance" for the purposes of section 13304. See Cal. Water Code § 13050(m). Therefore, if a defendant performs conduct which may be considered a "nuisance" under section 13050(m), and this conduct violates section 13304, then the defendant may be liable for nuisance per se .[18] In this case, however, Plaintiffs do not specifically allege that Defendants have committed a nuisance in violation of Water Code section 13304 or, in turn, section 13050(m). Plaintiffs allege only generally that Defendants have violated "the California Health & Safety Code and Water Code." (FAC ¶ 38.) This allegation, however, falls well short of sufficiently alleging a violation of a law supporting a nuisance per se claim. Therefore, Plaintiffs have failed to plead a viable nuisance per se claim. Accordingly, Plaintiffs' nuisance per se claim is DISMISSED without prejudice .
8. Plaintiffs' UCL Claims
Next, the Moving Defendants argue that Plaintiffs have failed to state claims under California's UCL. (See Getty MTD at 12-13.) California's UCL precludes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. As courts have explained, these three concepts are distinct; in other words, a business act or practice may be unlawful without being unfair or fraudulent or vice versa. See Cel-Tech Commc'ns , 20 Cal. 4th at 180, 83 Cal.Rptr.2d 548, 973 P.2d 527. Here, Plaintiffs allege that Defendants' conduct is both unlawful and unfair.
"A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." McKell v. Wash. Mut., Inc. , 142 Cal. App. 4th 1457, 1473, 49 Cal.Rptr.3d 227 (2006). The first alternative, alleging an unfair business practice as a violation of public policy, "requires that the public policy ... be tethered to specific constitutional, statutory, or regulatory provisions." Backhaut v. Apple, Inc. , 74 F.Supp.3d 1033, 1051 (N.D. Cal. 2014) (internal quotation marks omitted). Here, as determined above, Plaintiffs have adequately alleged that Defendants are liable for a public nuisance in violation of California Civil Code section 3480 by allowing their pipelines to release hazardous materials and contaminate the Site. Thus, Defendants' alleged practices may be a violation of California's public policy of ensuring that a business does not cause a public nuisance.
In addition, Plaintiffs sufficiently allege an unfair UCL claim under the second alternative. Plaintiffs allege that Defendants have allowed their pipelines to release hazardous waste at the Site but have failed to take any responsibility for the cleanup and remediation of the Site. (See FAC ¶¶ 31, 35.) The failure to take responsibility may constitute immoral, unethical, or oppressive conduct and the hazardous leak, as addressed above, causes significant harm to consumers as it constitutes a public nuisance. Therefore, Plaintiffs have adequately alleged a UCL claim under the unfair prong.
*1057 As to the "unlawful" prong, "the UCL permits violations of other laws to be treated as unfair competition that is independently actionable." McKell , 142 Cal. App. 4th at 1474-75, 49 Cal.Rptr.3d 227 (citations omitted). Thus, as Plaintiffs have adequately pleaded that Defendants may be responsible for a public nuisance in violation of California Civil Code section 3480, Plaintiffs have adequately pleaded an unlawful UCL claim. See People ex rel. Trutanich v. Joseph , 204 Cal. App. 4th 1512, 1525, 140 Cal.Rptr.3d 9 (2012) (finding that violations of California's public nuisance law could support a UCL claim under the unlawful prong).
Accordingly, the Court finds that Plaintiffs have pleaded a viable UCL claim and DENIES the Moving Defendants' Motion as to this claim.
VI. CONCLUSION
For the foregoing reasons, the Moving Defendants' 12(b)(1) Motion to Dismiss is DENIED . The Moving Defendants' 12(b)(6) Motion to Dismiss is GRANTED in part and DENIED in part . Specifically, Plaintiffs' contribution, equitable indemnity, and nuisance per se claims are DISMISSED without prejudice . However, the Moving Defendants' 12(b)(6) Motion is DENIED as to Plaintiffs' declaratory relief, trespass, private nuisance, public nuisance, and UCL claims. Plaintiffs are ORDERED to file a Second Amended Complaint, if any, no later than Monday, May 8, 2017, by 4:00 p.m.
IT IS SO ORDERED.

The Court refers to Union, ENI, Plains, and Crimson collectively as the "Moving Defendants."

On March 3, 2017, the Moving Defendants filed a Notice of Errata to inform the Court that they had inadvertently filed a version of their 12(b)(6) Motion that did not contain hyperlinks. (See Dkt. No. 67 (citing Dkt. No. 63).) Accordingly, they refiled a corrected version of their Motion. (Id. (citing Dkt. No. 65).) The Court considers only the amended Motion. Therefore, their original Motion is DENIED as moot .

Plaintiffs also aver that "[t]hree subsidiaries are relevant here": (1) Valero Marketing and Supply Company; (2) Valero Refining Company-California; and, (3) Valero Terminaling and Distribution Company. (FAC ¶ 13.)

For the purposes of this Motion, the Court refers to all Defendants against whom Plaintiffs bring state law claims (i.e., as explained below, all Defendants other than LACSD) collectively as "Defendants."

The Court refers to these pipelines collectively as "Defendants' Pipelines."

There is one exception, however, when the Regional Board sent Plains an inquiry regarding Line 52 located beneath Golden Avenue. (FAC ¶ 43.) Plains represented that Line 52 was inactive and never carried gasoline. (FAC ¶ 44.) Accordingly, the Regional Board stopped pursuing Plains as a potentially responsible party. (Id. ) Plaintiffs claim that their investigation, however, has determined that Line 52 carried both gasoline and wastewater and, therefore, it is a possible source of contaminants. (FAC ¶ 45.)

Plaintiffs' Original Complaint included additional Defendants, including the City of Long Beach, the County of Los Angeles, and the Long Beach Water Department who are no longer included as Defendants in Plaintiffs' FAC. (Compare Dkt. No. 1 with FAC.)

As a threshold matter, Plaintiffs urge the Court to deny the Moving Defendants' 12(b)(1) Motion because the Moving Defendants failed to adequately comply with Central District Local Rule 7-3. (See Plains Opp'n at 11-12.) Local Rule 7-3 requires that, at least seven days prior to the filing of any motion, the parties "first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." C.D. Cal. L.R. 7-3. According to Plaintiffs, the Moving Defendants failed to meet and confer adequately as their Rule 7-3 conference addressed primarily the Moving Defendants' Rule 12(b)(6) Motion to Dismiss. (See Plains Opp'n at 11-12.) Plaintiffs claim that "as an aside" ENI's counsel mentioned that Defendants were considering filing a Rule 12(b)(1) Motion. (Plain's Opp'n at 12.) In addition, Plaintiffs contend that neither Crimson nor Plains were part of the Rule 7-3 conference, even though Plains ultimately filed the 12(b)(1) Motion. (Id. ) Although the Court does not condone the Moving Defendants' behavior, the Court finds that it would be inappropriate to decide the Moving Defendants' 12(b)(1) Motion on this procedural ground. The Court admonishes the Moving Defendants to comply with this Court's Local Rules and Standing Order moving forwards and warns the Moving Defendants that failure to do so may result in the imposition of sanctions.

Though, as explained below, the Court finds that Plaintiffs have not adequately pleaded contribution and indemnity claims, regardless.

In addition, the Moving Defendants argue that CERCLA provides for strict liability recovery while Plaintiffs' state law claims require proving causation. (See Plains MTD at 9.) However, CERCLA requires that Plaintiffs establish that LACSD conduct "cause[d] the incurrence of response costs." 42 U.S.C. § 9607(a)(4). Thus, to the extent Defendants dispute which Defendants' conduct, if any, caused Plaintiffs to incur response costs, judicial efficiency requires all Defendants to be present in one action in order to ensure a consistent result.

Plaintiffs explain that they cannot move to join OOI until May 5, 2017, once they have satisfied CERCLA and the RCRA's sixty-day prelitigation notice requirements. (See Plains Opp'n at 11); see also Frost v. Perry , 919 F.Supp. 1459, 1469 (D. Nev. 1996) (explaining that CERCLA and the RCRA's sixty-day notice requirements are jurisdictional prerequisites).

In their Opposition, Plaintiffs argue that Sullins does not stand "for the proposition that there can be no equitable indemnity absent an adverse judgment or settlement." (Getty Opp'n at 18.) Plaintiffs are incorrect. Sullins , along with myriad California case law, as cited above, stands for this proposition. It appears, however, that Plaintiffs confuse equitable contribution with equitable indemnity . (See Getty Opp'n at 18 (arguing that California Civil Code section 1432 -the equitable contribution statute-is implicated by Plaintiffs' equitable indemnity claim).) The two concepts are distinct. See Sullins , 729 F.Supp.2d at 1138-40 (discussing equitable contribution and equitable indemnity as separate concepts).

Plaintiffs do not define the scope of their easements or other property interests in their FAC. Thus, for instance, if Plaintiffs' only property interest was in specific pipelines running below the Site, if the contamination did not reach these pipelines, Plaintiffs may not have the requisite possessory interest in the contaminated portions of the Site to support a trespass claim. At the motion to dismiss stage, however, the Court construes all facts in Plaintiffs' favor. See Livid Holdings Ltd. v. Salomon Smith Barney, Inc. , 416 F.3d 940, 946 (9th Cir. 2005). Thus, the Court finds that Plaintiffs' allegations are sufficient to establish a possessory interest here.

It appears that the Moving Defendants are also arguing that Plaintiffs' only interest in the Site is the ability to run its pipelines through the Site. (See Getty Reply at 5 (arguing that Plaintiffs must establish interference with their pipeline operations).) But Plaintiffs' allege that they have the ability to "control, use, and operate the Site." (FAC ¶ 28.) Thus, it appears that Plaintiffs are alleging a broader interest in the Site than that understood by the Moving Defendants. At this stage, the Court assumes the truth of Plaintiff's allegations. See Twombly , 550 U.S. at 589, 127 S.Ct. 1955.

Whether conduct is sufficiently "substantial" and "unreasonable" are questions of fact that must "be determined by the trier of fact in each case in the light of all the circumstances of that case." San Diego Gas & Elec. Co v. Superior Court , 13 Cal. 4th 893, 938-39, 55 Cal.Rptr.2d 724, 920 P.2d 669 (1996) (internal quotation marks omitted). At this stage, the Court need only find that Plaintiffs have pleaded sufficient facts to allow the trier of fact to conclude that the Moving Defendants' alleged interference was substantial and unreasonable.

Moreover, to the extent the Moving Defendants argue that Plaintiffs do not share an injury with the general public, (see Getty Reply at 6-7), the Court disagrees. A public nuisance, as explained above, affects a public right. See Monks , 167 Cal. App. 4th at 300, 84 Cal.Rptr.3d 75. Thus, Plaintiffs and the public share a common injury; the violation of their right to have non-contaminated groundwater.

In support of their proposition that Plaintiffs' failure to allege how they use the groundwater precludes their public nuisance claim, the Moving Defendants cite a non-binding Third Circuit decision as well as an unpublished 1989 decision from this district. (See Getty Reply at 7 (citing Phila. Elec. Co. v. Hercules, Inc. , 762 F.2d 303 (3d Cir. 1985) ; Cadillac Fairview v. Dow Chem. Co. , No. CV 83-8034 JMI (Bx), 1989 U.S. Dist. LEXIS 5301 (C.D. Cal. Jan. 18, 1989) ).) Neither of these decisions are binding, and the Court does not find these decisions persuasive as they were made without the benefit of the myriad decisions from both federal and California courts addressing California nuisance law in the time since.

The Moving Defendants cite Olson v. Beck , No. C-06-07487 JCS, 2011 WL 4634026, at *22 (N.D. Cal. Oct. 5, 2011), where the Court held that Water Code section 13304 did not support a nuisance per se claim. (See Getty Reply at 8.) The Court finds Newhall more persuasive, however, and agrees that section 13304 can support a nuisance per se claim.